| | |
|---|---|
| **GREAT AMERICAN INSURANCE CO.,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )  No: _4: 09 - cv - 17_ |
| | )  Mattice / Lee |
| **EDWARD SCOTT POTTER,** | ) |
| **KATHY POTTER,** | ) |
| **DANLON FARMS, L.L.C.,** | ) |
| **JOHN PUCKETT,** | ) |
| **JOHN PUCKETT and HOLLY PUCKETT,** | ) |
| **d/b/a PUCKETT STABLES,** | ) |
| **and CHARLES E. CHEEK,** | ) |
| | ) |
| Respondents. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Petitioner, Great American Insurance Co. ("Great American"), pursuant to Rule 57, Federal Rules of Civil Procedure, and 28 U.S.C., §2201, requests the Court to decide the rights and obligations of the parties hereto with respect to a certain policy of insurance.

### The Parties

1.    Great American is an insurance company licensed and duly qualified to conduct business in the State of Tennessee. Great American is a corporation organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

2.    Respondents, Scott Potter and Kathy Potter, are citizens and residents of the State of Tennessee.

3.    Respondent, Danlon Farms, L.L.C., is a limited liability company organized under the laws of the State of Tennessee.

4.    Respondent, John Puckett, is a citizen and resident of the State of Tennessee.

5.      The Respondents, John Puckett and Holly Puckett, are husband and wife and are citizens and residents of the State of Tennessee. John Puckett and Holly Puckett operate a partnership known as Puckett Stables.

6.      The Respondent, Charles E. Cheek is a citizen and resident of the State of Texas.

## Jurisdiction

7.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, diversity of citizenship. The amount in controversy exceeds $75,000 exclusive of interest and costs.

## The Policy

8.      Great American issued an Agripak policy to Scott Potter and Kathy Potter, and Danlon Farms, L.L.C., bearing policy number APK-1974439-03, with effective dates from April 4, 2003 to April 4, 2004. John Puckett is an additional insured on the policy. A true and accurate copy of the policy is attached as "Exhibit A" and incorporated herein by reference.

9.      The policy provides that Great American "will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." According to the policy, Great American has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

10.     The policy contains the following exclusion:

### AGRIPAK FARM AND RANCH POLICY

### FARM GENERAL LIABILITY COVERAGE FORM

...

**Exclusions**

This insurance does not apply to:

...

11.     Property damage is defined in the policy as

   (a)    physical injury to tangible property, including all resulting loss of
          use of that property; or
   (b)    loss of use of tangible property that is not physically injured.

## The Underlying Suit

12.     Charles E. Cheek has sued John Puckett, John Puckett and Holly Puckett, d/b/a Puckett Stables, Danlon Farms, L.L.C., Edward Scott Potter, and Kathy Potter ("The Underlying Suit"). Mr. Cheek alleges that he acquired a show horse with world brand champion bloodlines at a cost of One Hundred Ten Thousand & No/100 Dollars ($110,000.00), and thereafter incurred costs exceeding Fifty Thousand & No/100 Dollars ($50,000.00) for the care, training, showing, and breeding of the horse. He alleges that on or about May 15, 2002, he entered into a contract with John Puckett to board, maintain, and care for the horse and her nine-day old first foal. He alleges that he delivered the horse and her foal, both in sound condition, to John Puckett at Danlon Farms, that Puckett accepted delivery of the horse and foal, and that several weeks later, Puckett moved the horse and her foal from Danlon Farms to rural property on which the Pucketts reside near Wartrace, Tennessee.

13.     Mr. Cheek alleges that the horse was delivered by John Puckett in sound condition to Danlon Farms and/or Scott Potter and Kathy Potter, and that the horse was put in the pasture at Danlon Farms to be cared for along with other horses under the care of Danlon Farms and/or the Potters.

14.     Mr. Cheek alleges that Danlon Farms and/or the Potters accepted delivery of the horse, and that Danlon Farms and/or the Potters provided care to the horse while in their pasture. Mr. Cheek alleges that the horse was discovered, on or about August 18, 2003, in the pasture at

4

Danlon Farms in an injured state. He alleges that the horse had to be euthanized as a result of its injuries.

15. Mr. Cheek alleges that the Defendants in the underlying suit failed to properly care for, maintain, and look after the horse, or even discover her plight, while in their care, which resulted in her irreparable injury and death. Mr. Cheek asserts causes of action in bailment, negligence, and breach of contract.

16. Mr. Cheek alleges John Puckett negligently breached duties owed him while caring for "The Lady Doc" resulting in the mare's "Broken Promises" foal being aborted.

17. Mr. Cheek contends John Puckett is liable for breach of contract due to his failure to train, develop and market Skywatch Filly causing him to be damaged. A true and accurate copy of the Complaint is attached as "Exhibit B."

## Coverage Issues

18. The claims alleged against the Defendants in the underlying suit are not covered by the policy, and therefore, Great American does not owe them a duty to defend and/or indemnify same. The basis for there not being any coverage under the policy includes, but is not necessarily limited to, the exclusion for property damage to personal property of others in the insured's "care, custody, or control." Under the terms of the policy, property damage means "physical injury to tangible property, including all resulting loss of use of that property." Further, there is no coverage under the policy because the Defendants are being sued for property damages under a contract or agreement whereby they assumed liability. Finally, there is no coverage for the Defendants because they are being sued for failing to render professional services under a contract and for property damage arising out of their business pursuits.

5

**WHEREFORE**, premises considered, Great American prays the following:

1.    That the Court render a declaratory judgment that the claims alleged against the Defendants in the underlying suit are not covered by the policy, and therefore, that Great American does not owe them a duty to defend and/or indemnify same; and

2.    That Great American receive such other, further, and general relief that the Court deems just and proper.

Respectfully submitted,

/s/ Christopher M. Jones
Mark S. LeVan, (# 012155)
Christopher M. Jones (# 022142)
**LeVAN, SPRADER, PATTON & McCASKILL**
150 Fourth Avenue North, Suite 1020
Nashville, TN 37219
(615) 843-0300 telephone
(615) 843-0310 facsimile

*Attorneys for Petitioner*



Administrative Offices
580 Walnut Street
Cincinnati, OH 45202
513.369.5000 ph

**IL 70 23 (Ed. 09 93)**

Policy No.  APK  1-97-44-39 - 03
Renewal Of APK  1-97-44-39 - 02

## AGRIPAK FARM AND RANCH POLICY COMMON DECLARATIONS

| NAMED INSURED AND MAILING ADDRESS: | POLICY PERIOD: |
|---|---|
| SCOT & KATHY POTTER<br>DANLON FARMS<br>400 NEW HERMAN RD<br>SHELBYVILLE, TN          37160 | 12:01 A.M. Standard Time at the address<br>of the Named Insured shown at left.<br>From  04/04/03  To  04/04/04 |
| IN RETURN FOR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. | AGENT'S NAME AND ADDRESS:<br>S.H. LIDDELL AGENCY<br>4802-B BROWNSBORO RD<br>LOUISVILLE                KY      40207 |

Insurance is afforded by company indicated below:

GREAT AMERICAN INSURANCE COMPANY

(A capital stock corporation)

**TYPE OF FARM:**  HORSE BOARDING AND TRAINING

This policy consists of the following Coverage
forms for which a premium is indicated. This
premium may be subject to adjustment.

**Premium**

| | |
|---|---|
| Farm Property | $ 5294. |
| Farm General Liability | $  659. |
| Farm Auto | $ |
| Agriguard | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| **Total** | **$ 5953.** |

Premium shown is payable:  $ 5953.          at inception;
    $

(  ) Choice Billed      ( X ) Agency Billed

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made a part of this
policy at time of issue are listed on the attached Forms and Endorsements
Schedule IL 70 26 (05/90).

Countersigned _____  By _____
              Date                    Authorized Representative

**EXHIBIT**

_A_

F.8972C(9/01)   Case 4:09-cv-00017-HSM-SKL   Document 1   Filed 02/17/09   Page 6 of 118   PageID #: 6
IL 70  23  (Ed. 09/93) PRO           (Page 1 of 1)

1



**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, OH 45202
513.369.5000 ph

**IL 70 25 (Ed. 09 97)**
**Policy No.**   APK  1-97-44-39 - 03
**Effective Date of Change  04/04/03**

## AGRIPAK FARM AND RANCH POLICY AND
## AGRIGUARD® FARM CATASTROPHE LIABILITY COVERAGE FORM CHANGES

| NAMED INSURED AND MAILING ADDRESS:<br>SCOT & KATHY POTTER<br>DANLON FARMS<br>400 NEW HERMAN RD<br>SHELBYVILLE, TN           37160 | POLICY PERIOD:<br>12:01 A.M. Standard Time at the<br>address of the Named Insured<br>shown at left.<br>From   04/04/03     To 04/04/04 |
|---|---|
| **THIS ENDORSEMENT CHANGES THE POLICY.**<br><br>**PLEASE READ IT CAREFULLY.** | AGENT'S NAME AND ADDRESS:<br>S.H. LIDDELL AGENCY<br>4802-B BROWNSBORO RD<br>LOUISVILLE            KY     40207 |

Insurance is afforded by company indicated below:

GREAT AMERICAN INSURANCE COMPANY

(A capital stock corporation)

It is agreed that this policy is hereby amended as indicated below by " X ":

( )Insured's Name     ( )Insured's Address     ( )Location     ( )Liability
( )Deductible     ( )Loss Payee Added     ( )Mortgage Clause

ORM AL7401 IS AMENDED INCREASING LIABILITY LIMITS.  SEE FORM ATTACHED.

FORM AL7402 IS AMENDED ADDING ADD'L INSURED & RECREATIONAL VEHICLE
COVERAGES AND INCREASING LIABILITY LIMIT.  SEE FORM ATTACHED.

FORM AP8802, MACHINERY SCHEDULE IS AMENDED.  SEE FORM ATTACHED.

FORMS AL7414 & AL7405 ARE ADDED.  SEE FORM ATTACHED.

59 KEB 070203

| Additional Premium: $  1162. | Return Premium: $ |
|---|---|

**FORMS AND ENDORSEMENTS** hereby added or amended:   AL7401      AL7402
AL7414      AL7405      AP8802

Countersigned _____      By _____

F.8972C(9/01)  Case 4:09-cv-00017-HSM-SKL  Document 1  Filed 02/17/09  Page 7 of 118  PageID #: 7

IL 70 25 (Ed  09/97) PRO        (Page    of    )

2

C  ˙59˙10/20/04˙AFK19/4459˙05                                        COPY OF ORIGINAL



**Administrative Offices**
**580 Walnut Street**
**Cincinnati, Ohio 45202**
**Tel: 1-513-369-5000**

IL 70 24
(Ed. 05 90)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AGRIPAK FARM AND RANCH POLICY

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. make inspections and surveys at any time;

2. give you reports on the conditions we find; and

3. recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. are safe or healthful; or

2. comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### E. PREMIUMS

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all pre-

3

**2.** will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

L 70 24 (Ed. 05/90) XS                        (Page 2 of 2)



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
**GREAT**AMERICAN. Tel: 1-513-369-5000
INSURANCE GROUP

**IL 70 26 (Ed. 05 90)**

## AGRIPAK FARM AND RANCH POLICY

### FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are
attached to and are a part of this policy:

| IL7027 | 08/97 | TN | AGRIGUARD LIABILITY CATASTROPHE JKT |
| IL7023 | 09/93 | TN | AGRIPAK FARM & RANCH POL COM DEC |
| IL7024 | 05/90 | TN | AP FARM-RANCH-COMMON POLICY CONDITIONS |
| IL7149 | 07/98 | TN | HORSE OPERATIONS EXCLUSION |
| IL0959 | 11/02 | TN | EXCL CET CAP LOS CERT FIRE LOSS |
| CG2171 | 12/02 | TN | LMTD TERR EXCL CAP LOSS CERT ACT TERR |
| CG2176 | 11/02 | TN | EXCL PUNI DAM REL CERT ACT TERR |
| AP7290 | 01/03 | TN | DISCLOSURE PURSUT TERROR RISK ACT |

IL 70 26 (Ed. 05/90) PRO        (Page 1 of 1 )

4

**IL 09 59**
(Ed. 11 02)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITED EXCLUSION OF ACTS OF TERRORISM (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

AGRIPAK FARM PROPERTY COVERAGE FORM
AGRIBUSINESS PROTECTION POLICY
BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYEE THEFT AND FORGERY POLICY
EQUINE CARE, CUSTODY OR CONTROL COVERAGE FORM
FARM COVERAGE PART
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION POLICY
SELECT BUSINESS POLICY
STANDARD PROPERTY POLICY

A. The following definitions are added with respect to the provisions of this endorsement:

1. **"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

   a. the act resulted in aggregate losses in excess of $5 million; and

   b. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. **"Other act of terrorism"** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism," when such act resulted in aggregate losses of $5 million or less.

B. The following exclusion is added:

   **Exclusion Of An "Other Act Of Terrorism"**

   We will not pay for loss or damage caused directly or indirectly by an "other act of terrorism." Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence

to the loss. But this exclusion applies only when one or more of the following are attributed to such act.

1. the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

2. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

3. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "other acts of terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

With respect to this item **B.3.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an "other act of terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an "other act of terrorism," there is no coverage under this Coverage Part or Policy.

**C. Cap On Certified Terrorism Losses**

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the **Nuclear Hazard** Exclusion or the **War and Military Action** Exclusion.

Copyright, ISO Properties, Inc., 2002



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 88 01 (Ed. 05 90)

## AGRIPAK FARM AND RANCH POLICY

### FARM PROPERTY FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

|  | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | AP7201 | 07/96 | TN | FARM PROPERTY COVERAGE DECLARATIONS |
| 2. | AP7202 | 05/90 | TN | FARM PROPERTY COVERAGE DEC PAGE |
| 3. | AP7203 | 05/90 | TN | INSURED LOCATIONS |
| 4. | AP7204 | 03/96 | TN | FARM PROP COV-SECTION A-COV A,B,C&D |
| 5. | AP7206 | 09/96 | TN | FARM PROPERTY COV-SECTION A-COV E |
| 6. | AP7208 | 03/96 | TN | FARM PROPERTY COV-SECTION A-COV G |
| 7. | AP7211 | 05/93 | TN | FARM PROP COV-SECTION B-BROAD |
| 8. | AP7212 | 03/96 | TN | FARM PROPERTY COVERAGE FORM-SPECIAL |
| 9. | AP7215 | 10/97 | TN | FARM PROPERTY COVERAGE FORM |
| 10. | AP8122 | 04/96 | TN | REPLACEMENT COST - TACK |
| 11. | AP7249 | 05/93 | TN | REPLACEMENT COST-HOUSEHOLD PER PROP |
| 12. | AP7221 | 07/96 | TN | SCHEDULED PERSONAL PROPERTY COV |
| 13. | AP8802 | 05/90 | TN | GENERAL ENDORSEMENT |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |
| 22. | | | | |

*If not at inception

Case 4:09-cv-00017-HSM-SKL   Document 1   Filed 02/17/09   Page 13 of 118   PageID #: 13

C +59-10/20/04-APK197449-05      COPY OF ORIGINAL

 **GREAT**AMERICAN.
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 72 01** (Ed. 07 96)

**Policy No.** APK 1-97-44-39 - 03

## AGRIPAK FARM AND RANCH POLICY

### FARM PROPERTY COVERAGE DECLARATIONS PAGE

| **NAMED INSURED:** SCOT & KATHY POTTER DANLON FARMS | **POLICY PERIOD:** 04/04/03 to 04/04/04 |
|---|---|

**MORTGAGE HOLDERS:**

"Insured
Location"     Bldg.
No.           No.          Mortgage Holder Name and Mailing Address

UNION PLANTERS BANK
PO BOX 500
SHELBYVILLE, TN 37160

**LOSS PAYEE:**

Loss, if any, shall be adjusted with the Insured and shall be payable to the Insured and listed payee as their interests may appear.

Name                    Address                    Item(s)

N/A

**DEDUCTIBLE:** $ 500. DEDUCTIBLE APPLIES TO ALL ITEMS

**LOSS FREE CREDIT:** This policy contains 10 % credit on the Farm Property and General Liability premiums because you have not reported any claims. If a zero appears above, then you have reported a claim(s) during the previous policy period. The credit will range from 0-10 percent depending upon claims reported.

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule, AP 88 01 (05/90).

Case 4:09-cv-00017-HSM-SKL Document 1 Filed 02/17/09 Page 14 of 118 PageID #: 14
AP 72 01 (Ed. 07/96) PRO     (Page 1 of 1 )



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 72 02** (Ed. 05 90)

## AGRIPAK FARM AND RANCH POLICY

### FARM PROPERTY COVERAGE DECLARATIONS PAGE

Ba = Basic;          Br = Broad;          SP/Br = Special/Broad          Sp = Special;
Eq = Earthquake;      Ms = Mine Subsidence and * = See Form

| "Insured Location" No. | Coverage | Property Description | Limit of Insurance | Covered Causes of Loss | Miscellaneous |
|---|---|---|---|---|---|
| 1 | A | O/O DWELLING 1 | $ 250,000. | SP | |
| | B | APPURT STRUCTURE | 25,000. | SP | |
| | C | HOUSEHOLD PERS PROP | 175,000. | BR | *RC |
| | D | LOSS OF USE | 50,000. | SP | |
| | A | O/O DWELLING 2 | 60,000. | SP | |
| | B | APPURT STRUCTURE | 6,000. | SP | |
| | C | HOUSEHOLD PERS PROP | 42,000. | BR | *RC |
| | D | LOSS OF USE | 12,000. | SP | |
| | E | MACHINERY | * | SP | *AP8802 |
| | E | MISC FARM PERS PROP -TACK | 10,000. | SP | *AP8122 |
| | G | MAIN BARN | 250,000. | SP | |
| | G | BARN 2 | 15,000. | SP | |
| | G | BARN 3 | 15,000. | SP | |
| | G | BARN 4 | 20,000. | SP | |
| | G | BARN 5 | 15,000. | SP | |
| | | SCHEDULED PERS PROP | * | * | *AP7221 |



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 72 03
(Ed. 05 90)

## AGRIPAK FARM AND RANCH POLICY

### INSURED LOCATIONS

| Location Number | Insured Locations' Address or Complete Legal Description |
|:---:|:---|
| 1 | 100 ACRES, 400 NEW HERMAN RD, SHCELBYVILLE, BEDFORD CO., TN |

AP 72 03 (Ed. 05 90) RPC                    (Page 01 of 01 )



**Administrative Offices**
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 72 04**
(Ed. 03 96)

# AGRIPAK FARM AND RANCH POLICY

## FARM PROPERTY COVERAGE FORM

### SECTION A

**COVERAGE A - DWELLINGS**
**COVERAGE B - OTHER PRIVATE STRUCTURES APPURTENANT TO DWELLINGS**
**COVERAGE C - HOUSEHOLD PERSONAL PROPERTY**
**COVERAGE D - LOSS OF USE**

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the "insured location" described in the Declarations, or elsewhere as expressly provided below, caused by or resulting from any Covered Cause of Loss.

**Coverage A - Dwellings**

**1. Covered Property**

The following are Covered Property under **Coverage A** of this Coverage Form:

**a.** each "dwelling" owned by you and for which a Limit of Insurance is shown in the Declarations. The "dwelling" may be located on or away from the "insured location";

**b.** structures attached to covered "dwellings," except structures attached only by a fence, utility line or similar connection;

**c.** materials on the "insured location" intended for use in building, altering or repairing the covered "dwellings" or their attached structures;

**d.** if not otherwise covered in this policy, building and outdoor equipment used principally for the service of the "dwelling," its grounds or structures appurtenant to it, including equipment temporarily away from the premises;

**2. Property Not Covered**

Under **Coverage A,** Covered Property does not include:

**a.** land (including land on which the "dwelling" is located);

**b.** water; or

**c.** trees, shrubs, plants or lawns, except to the extent permitted by **Coverage Extension 1.**

**3. Coverage A Special Limit of Insurance**

Outdoor radio and TV antennas and towers and satellite system including all electronic components attached to covered "dwellings" are subject to a Special Limit of Insurance of $250 in any one occurrence. This Special Limit is part of, not in addition to, the **Coverage A** Limit of Insurance.

This Special Limit of Insurance applies in excess of any applicable Deductible.

If a higher Limit of Insurance is specified in the Declarations, the higher limit will apply.

**4. Coverage A and B Conditions**

Coverage A and B are subject to the following Loss Condition as well as to the Farm Property Conditions and the Common Policy Conditions.

10

**Loss Condition - Valuation**

**a. Property**

(1) The basis for loss settlement will be determined by the ratio of the **Coverage A Dwelling Limit of Insurance** to the full replacement cost of the destroyed or damaged Covered Property. When determining the full replacement cost, the values of the following will be disregarded:

(a) excavations;

(b) foundations; and

(c) piers and other supports below the undersurface of the lowest basement floor; or, where there is no basement, those below the surface of the ground inside the foundation walls; also underground flues, pipes, wiring and drains.

(2) If the Limit of Insurance on the damaged structure is at least 80% of its full replacement cost as of the time of loss, we will settle the loss based on the smallest of the following amounts:

(a) The cost to replace the damaged part of the structure with equivalent construction for use on the same premises.

(b) The amount actually and necessarily spent to repair or replace the structure.

(c) The applicable Limit of Insurance.

(3) If the Limit of Insurance on the damaged structure is less than 80% of its full replacement cost as of the time of loss, we will settle on the basis of (a) or (b) below, whichever is larger, but not more than the applicable Limit of Insurance:

(a) The actual cash value, as of time of loss, of the damaged part of the structure.

(b) A proportion of the cost to repair or replace the damaged part of the structure, without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement. However, we will not pay more than the applicable Limit of Insurance, regardless of whether (a) or (b) above applies.

(4) If your loss qualifies for payment on a replacement cost basis, but the cost of repair or replacement is more than either $1,000 or 5% of the applicable Limit of Insurance, the only basis on which we will settle pending completion of repairs or replacement is actual cash value, as of time of loss, of the damaged part of the structure. In case of such a loss you can make an initial claim for payment on the actual cash value basis, and later make a supplementary claim for replacement cost payment. If you elect to exercise this option, you must notify us of your intention within 180 days of the occurrence of the loss.

**b. Glass Replacement**

We will settle on the basis of the cost to replace damaged glass with safety glazing material, if required by law.

**Coverage B - Other Private Structures Appurtenant To Dwellings**

**1. Covered Property**

**a. Private Structures**

You may apply, as an additional amount of insurance, up to 10% of the Limit of Insurance shown in the Declarations for **Coverage A - Dwellings** to unattached private structures including outdoor radio and TV antennas and

towers and satellite system including all electronic components attached to such unattached private structures:

  (1) separated from the dwelling by a clear space; or

  (2) attached to the dwelling only by a fence, utility line or similar connection.

If specific Private Structure(s) are shown in the Declarations, the Limit of Insurance shown will apply.

## 2. Property Not Covered

Under **Coverage B,** Covered Property does not include:

  a. land (including land on which the other structures are located);

  b. water;

  c. structures that you rent or hold for rental to any person who is not a tenant of the covered "dwelling"; or

  d. structures that you use for farming purposes or other business activity.

## 3. Coverage B Special Limit Of Insurance

Outdoor radio and TV antennas and towers and satellite system including all electronic components, not attached to covered "appurtenant structure," are subject to a Special Limit of Insurance of $250 in any one occurrence. This Special Limit is part of, not in addition to, the **Coverage B Limit of Insurance.**

This Special Limit of Insurance applies in excess of any applicable Deductible.

If a higher Limit of Insurance is specified in the Declarations, the higher limit will apply.

## 4. Coverage B Conditions

**Coverage B** is subject to the Valuation Loss Condition shown in Paragraph **4.** under **Coverage A.** It is also subject to the Farm Property Conditions and the Common Policy Conditions.

## Coverage C - Household Personal Property

### 1. Covered Property

All of the following are Covered Property under **Coverage C** of this Coverage Form, provided a Limit of Insurance is shown in the Declarations:

Household personal property means:

  a. household personal property owned or used by you or members of your family who reside with you, while such property is on the "insured location"; and

  b. at your request, household personal property of others while the property is:

    (1) in a part of the "dwelling" you occupy; or

    (2) on the grounds appurtenant to that "dwelling" if you own it.

### 2. Property Not Covered

Under **Coverage C,** Covered Property does not include:

  a. articles separately described and specifically covered under this or any other insurance;

  b. aircraft and aircraft parts;

  c. trees, shrubs, plants and lawns that you own as a tenant, except to the extent provided for in Paragraph **1.(2)** of the **Coverage Extensions To Coverages A, B** and **C;**

  d. animals, birds or fish;

  e. "business property" except to the extent provided for in Paragraph **3. Coverage C Special Limits of Insurance;**

  f. magnetic recording or storage media for electronic data processing, such as cell, disc, drum, film and tape, over or above their replacement value:

    (1) as prepackaged software programs; or

(2) in unexposed or blank form;

whichever is greater.

g. any device or instrument, other than cellular telephones, for the transmitting, recording, receiving or reproducing of sound or pictures that is operated by power from the electrical system of motor vehicles or motorized land conveyances of any kind, including while in or on the vehicle:

    (1) accessories and antennas; and

    (2) tapes, wires, records, disc or other media;

for use with any such device or instrument.

But Covered Property includes items specifically scheduled in the Declarations.

h. cellular telephones including accessories and antennas.

i. "farm personal property," other than office fixtures, furniture and office equipment;

j. any motor vehicles or motorized land conveyance, or its equipment or accessories. But Covered Property includes vehicles not licensed for road use that are:

    (1) used only for servicing an "Insured's" "dwelling," its grounds or structures appurtenant to it;

    (2) designed and used for assisting the handicapped.

## 3. Coverage C Special Limits Of Insurance

Certain categories of household personal property are subject to Special Limits of Insurance. These Special Limits are part of, not in addition to, the applicable Limit of Insurance shown in the Declarations, and apply in excess of any applicable deductible. The Special Limit shown with any category listed below is the most we will pay for loss of or damage to all property in that category in any one occurrence:

a. $500 on gold other than goldware, "money," platinum, numismatic property and silver other than silverware;

b. $2,500 on letters of credit, manuscripts, passports, stamps, philatelic property, bills, deeds, letters of credit and "securities";

c. $2,500 on watercraft, including their equipment, furnishings, outboard engines or motors, and trailers;

d. $2,500 on trailers not used with watercraft nor for farming operations;

e. $2,500 on gravemarkers;

f.   (1) $2,500 on "business property" on the "insured location";

    (2) $500 on "business property" off the "insured location"; and

g. in the event of loss by theft:

    (1) $2,500 on furs, jewelry, precious and semi-precious stones, and watches;

    (2) $3,000 on firearms.

## 4. Coverage C Conditions

Coverage C is subject to the following Loss Condition as well as to the Farm Property Conditions and the Common Policy Conditions.

Loss Condition – Valuation

In the event of loss of or damage to covered household personal property, we will settle at actual cash value as of time of loss, but we will not pay more than the amount necessary for repair or replacement.

## Coverage Extensions To Coverages A, B And C

### 1. Extension of Coverages A and B or C

Trees, Shrubs, Plants and Lawns

Trees, shrubs, plants and lawns located within 250 feet of a covered "dwelling" are Covered Property but only if loss or

damage is caused by or results from any of the following Covered Causes of Loss: fire or lightning, explosion, riot, civil commotion, aircraft, vehicles not owned or operated by a resident of the covered "dwelling," vandalism, or theft.

For all damaged or destroyed trees, shrubs, plants or lawns located within 250 feet of a covered "dwelling," the most we will pay under this Extension in any one occurrence is:

- (1) 5% of the Coverage A Limit of Insurance shown in the Declarations for the "dwelling"; or

- (2) 10% of the Coverage C Limit of Insurance shown in the Declarations if you are a tenant.

However, we will not pay more than $500 for any one damaged or destroyed tree, shrub, plant or lawn.

This Extension is additional insurance.

We will not pay for loss of or damage to trees, shrubs, plants or lawns grown for business or farming purposes.

**2. Extensions of Coverage C Applicable Whether You are Owner or Tenant**

Each of the following Extensions is part of, not in addition to, the applicable Limit of Insurance.

- a. Household Personal Property of "Insureds" Away from the "Insured Location"

  Covered Property is extended to mean household personal property anywhere in the world, provided it is owned or used by you or members of your family who reside with you on the "insured location."

  But Insured's household personal property at any "Insured's" "residence" away from the "insured location" shown in the Declarations is subject to a Special Limit of Insurance equal to:

  - (1) 10% of the Limit of Insurance shown in the Declarations for Household Personal Property; or

(2) $3,000;

whichever is greater. The only such property not permanently subject to the above Special Limit is household personal property at a newly acquired principle residence. For a period of 30 days immediately after you begin moving it to the newly acquired "residence premises," this property will be subject to the Limit of Insurance shown in the Declarations for Household Personal Property. That Limit will apply on a pro rata basis during the 30-day period to personal property at both locations.

- b. Refrigerated Products-Not "Farm Personal Property"

  - (1) We will pay up to $500 for loss of or damage to contents of a freezer or refrigerated unit, in the "dwelling" you occupy or a structure appurtenant to it, caused by a change in temperature due to:

    - (i) interruption of electrical service to refrigeration equipment, caused by damage to generating or transmission equipment; or

    - (ii) mechanical or electrical breakdown of a refrigeration system.

  - (2) Under this Coverage Extension we will not pay for loss of or damage to:

    - (i) "farm personal property"; or

    - (ii) property not owned by you.

  - (3) This Coverage Extension will not apply unless you maintain the refrigeration equipment in proper working order.

  - (4) No deductible applies to this Refrigerated Products Extension of Coverage.

**3. Extension of Coverage C Applicable Only if You are a Tenant**

Building Additions and Alterations

**a. Coverage**

Your insurance under **Coverage C - Household Personal Property** includes building additions, alterations, fixtures, improvements or installations made or acquired at your expense to that part of the "dwelling" used exclusively by you. The Limit of Insurance for this Coverage Extension is 10% of the Limit of Insurance that applies to Household Personal Property. But if a higher Limit of Insurance is shown in the Declarations, the higher Limit applies.

This Extension is additional insurance.

**b. Loss Settlement**

If the repair or replacement is done at the expense of the "Insured" within 12 months after the loss, we will settle the loss on the basis of actual cash value as of time of loss.

If the repair or replacement is not done within 12 months after loss, we will settle on the basis of a proportion of the cost of repair or replacement. This proportion will equal the ratio of (1) below to (2) below.

(1) The period of time from the loss or damage to the expiration of the lease.

(2) The period of time from the installation of the improvements to the expiration of the lease.

Lease means the lease, whether written or oral, in effect at the time of the loss.

If your lease contains a renewal option, and if you exercise that option, the expiration of the renewal option period will replace the expiration of the lease in **(a)** and **(b)** above.

If repair or replacement is done at the expense of others for the use of the "Insured," we provide no insurance.

**Coverage D - Loss Of Use**

**1. Coverage**

We cover, up to the Limit of Insurance shown in the Declarations for Coverage D:

**a.** Your Additional Living Expense

If a Covered Cause of Loss renders your principle living quarters uninhabitable, we will pay any necessary increase in living expense you incur so that your household can maintain its normal standard of living, provided that such uninhabitable quarters are located in:

(1) a "dwelling" covered under Coverage A; or

(2) the "dwelling" in which covered Household Personal Property is located if you are a tenant.

Payment under this Additional Coverage will be for the shortest time required for repair or replacement of the damaged property, or, if you relocate, the shortest time required for your household to settle elsewhere.

**b.** Fair Rental Value

If a Covered Cause of Loss renders uninhabitable any portion of:

(1) a "dwelling" covered under Coverage A; or

(2) an appurtenant structure covered under Coverage B;

that you, as the owner, rent or hold for rental to others, we will pay for the Fair Rental Value loss you sustain.

But we will exclude from our payment any expenses that do not continue while the rental portion of the "residence premises" is uninhabitable.

Payment under this Additional Coverage will be for the shortest time required for repair or replacement of the damaged property.

c. Loss and Expense Due to Emergency Prohibition Against Occupancy

We will pay for the Additional Living Expense and Fair Rental Value loss you sustain if a civil authority prevents use of the "dwelling" or appurtenant structure because of direct damage to neighboring premises by a Covered Cause of Loss.

But we will not pay parts of such loss or expense that are incurred:

(1) after a period of 2 weeks has elapsed; or

(2) due to cancellation of a lease or agreement.

The period of our liability under Loss of Use is not limited by the expiration of this policy.

No Deductible applies to Coverage **D.**

## 2. Coverage D Conditions

See Farm Property Conditions and Common Policy Conditions.

## Additional Coverages To Coverages A, B, C and **D**

### 1. Removal of Fallen Trees

We will pay the reasonable expense you incur removing any fallen tree from the grounds appurtenant to your principal residence, provided that, in falling, the tree damaged property covered under Coverage **A, B,** or **C,** and provided further:

a. that the tree is not Covered Property, but the cause of its falling was a Covered Cause of Loss; or else

b. that the tree is Covered Property, but the cause of its falling was a Covered Cause of Loss other than fire or lightning, explosion, riot or civil commotion, aircraft, vehicles owned and operated by nonresidents of the covered "dwelling," vandalism, or theft.

Regardless of the number of fallen trees, we will pay no more than a total of $500.

## 2. Credit Cards and Fund Transfer Cards; Forgery; Counterfeit Currency

a. We will pay up to $2,000, unless a higher limit is indicated in the Declarations, for:

(1) The legal obligation of any "Insured" to pay because of the theft or unauthorized use of credit cards issued to any "Insured" or registered in any "Insured's" name.

But this Additional Coverage will not apply if any "Insured" has not complied with all terms and conditions under which the credit card was issued.

(2) Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to any "Insured" or registered in any "Insured's" name.

But this Additional Coverage will not apply if any "Insured" has not complied with all terms and conditions under which the fund transfer card was issued.

(3) Loss to any "Insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to any "Insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

But we will not pay for loss arising out of business pursuits or dishonesty of any "Insured."

No deductible applies to this Additional Coverage.

(b) Defense

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any suit ends

when the amount we pay for the loss equals the applicable Limit of Insurance.

(2) If a suit is brought against any "Insured" for liability under the Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

(3) We have the option to defend at our expense any "Insured" or any "Insured's" bank against any suit for the enforcement of a payment under the Forgery Coverage.

3. **Inflation Guard Coverage**

   a. The Limit of Insurance for **Coverage A** to which this endorsement applies, will increase at the annual rate of 5% unless a different annual rate is shown in the Declarations, applied pro rata during each year of the policy period.

   b. The amount of increase will be the product of multiplying (1) by (2):

      (1) The Limit of Insurance on the inception or last previous anniversary date of this policy.

      (2) The 5% percentage of annual increase shown above or other shown in the Declarations.

AP 72 04 (Ed. 03/96) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 72 11
(Ed. 05 93)

## AGRIPAK FARM AND RANCH POLICY

### FARM PROPERTY COVERAGE FORM

### SECTION B

#### B.2. COVERED CAUSES OF LOSS - BROAD

Covered Causes of Loss means the causes as described and limited below in accordance with a corresponding entry of **Broad** on the Declarations opposite each Coverage or property to which this insurance applies. However, certain covered property in Section A is covered only for particular causes of loss.

##### a. Fire Or Lightning

We will not pay for loss of or damage to buildings, or contents usual to a tobacco barn, if that loss or damage:

(1) results from the use of open fire for curing or drying tobacco in the barn; and

(2) occurs during, or within the 5-day period following, open-fire curing or drying.

##### b. Windstorm Or Hail, but not including:

(1) frost or cold weather;

(2) ice (other than hail), snow or sleet, whether driven by wind or not; or

(3) loss of or damage to:

(a) the interior of any building or structure, or the property inside a building or structure, caused by rain, snow, sleet, sand or dust, whether driven by wind or not, unless the building or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sleet, sand or dust enters; or

(b) watercraft or their trailers, furnishings, equipment or outboard motors unless within a fully enclosed building.

(c) under Coverage E or Coverage F:

(i) "livestock" or "poultry" when caused by running into streams, ponds or ditches, or against fences or other objects; or from smothering; or resulting directly or indirectly from fright;

(ii) "livestock" or "poultry" when caused by freezing or smothering in blizzards or snowstorms; or

(iii) unharvested barley, corn, oats, rye, wheat and other grains, flax, soybeans and sunflowers.

##### c. Explosion, including the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages of such a vessel from which the gases of combustion pass.

But under Coverages E, F and G this cause of loss does not include loss or damage caused by or resulting from:

(1) explosion of alcohol stills, steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

(2) electric arcing;

(3) rupture or bursting of water pipes;

(4) rupture, bursting or operation of pressure relief devices; and

(5) rupture or bursting due to expansion or swelling of the contents of any building or structure caused by or resulting from water.

**d. Riot Or Civil Commotion,** including:

(1) acts of striking employees while occupying the "insured location"; and

(2) looting occurring at the time and place of a riot or civil commotion.

**e. Aircraft**

Aircraft, meaning only loss or damage caused by or resulting from:

(1) contact of an aircraft, spacecraft of self-propelled missile with Covered Property or with a building or structure containing Covered Property; or

(2) objects falling from aircraft.

**f. Vehicles,** meaning only loss or damage caused by contact of a vehicle, or of an object thrown up by a vehicle, or of an object thrown up by a vehicle with Covered Property or with a building or structure containing Covered Property.

**g. Smoke,** causing sudden and accidental loss or damage.

This cause of loss does not include loss or damage by smoke from agricultural smudging or industrial operations.

**h. Vandalism**

This cause of loss does not include loss of or damage to:

(1) A "dwelling," or its contents, if the "dwelling" has been "vacant" for more than 30 consecutive days immediately before the loss.

(2) Any device or instrument, for the transmitting, recording, receiving or reproduction of sound or pictures, that is operated by power from the electrical system of a motor vehicle or mobile agricultural vehicle, unless it is:

(a) Covered Property; and

(b) permanently installed in the motor vehicle or mobile agricultural vehicle.

(3) While in or upon a motor vehicle or mobile agricultural vehicle, any tape, wire, record, disc or other medium for use with any device or instrument that transmits, records, receives or reproduces sound or pictures and that is operated by power from the electrical system of the motor vehicle or mobile agricultural vehicle.

**i. Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

This cause of loss does not include loss caused by or resulting from theft:

(1) due to unauthorized instructions to transfer property to any person or to any place;

(2) under Coverage A, B or C:

In or from a building or structure under construction, or of materials and supplies for use in such construction, until the building or structure is completed and occupied;

(3) under Coverage A, B or C:

(a) from that part of your principal residence, including its grounds and appurtenant structures, which you rent to someone who is not an "Insured";

(b) with respect to household personal property away from the "insured location," of:

(i) property at any residence owned by, rented to, or occupied by, and "insured," except while an "Insured," is temporarily residing there.

But property of a student who is an "Insured" is covered at a residence away from home provided the

student has been there at any time during the 45 days immediately preceding the loss;

(ii) any watercraft, its furnishings, equipment or outboard motors; or

(iii) trailers or campers.

(4) under Coverage E or F:

(a) discovered on taking inventory;

(b) due to wrongful conversion or embezzlement;

(c) due to escape or mysterious disappearance;

(d) due to acceptance of counterfeit money, fraudulent post office or express money orders, or checks or promissory notes not paid upon presentation; or

(5) of any device or instrument for the transmitting, recording, receiving or reproduction of sound or pictures, that is operated by power from the electrical system of a motor vehicle or mobile agricultural vehicle, unless it is:

(a) Covered Property; and

(b) permanently installed in the motor vehicle or mobile agricultural vehicle.

(6) while in or upon a motor vehicle or mobile agricultural vehicle, of any tape, wire, record, disc or other medium for use with any device or instrument that transmits, records, receives or reproduces sound or pictures and that is operated by power from the electrical system of the motor vehicle or mobile agricultural vehicle.

j. **Sinkhole Collapse,** means loss of damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) the cost of filling sinkholes; or

(2) sinking or collapse of land into man-made underground cavities.

k. **Volcanic Action,** meaning direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(1) airborne volcanic blast or airborne shock waves;

(2) ash, dust or particulate matter; or

(3) lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

This cause of loss does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the Covered Property.

l. **Collision** - Coverages E and F only

(1) Causing Damage To Covered Farm Machinery

We will pay for loss of or damage to covered farm machinery caused by collision with another object or by upset or overturn of that machinery. Collision means accidental contact of your farm machinery with another vehicle or object.

Under this cause of loss we will not pay for loss or damage:

(a) to tires or tubes unless the damage is coincidental with other damage to the farm machinery or implement;

(b) caused by contact between a tractor and implement during towing, hitching or unhitching; or

(c) caused by foreign objects taken into any farm machine or mechanical harvester.

COPY OF ORIGINAL

**(2)** Causing Death Of Covered Livestock

We will also pay for loss of covered "livestock" through death caused by, or destruction necessitated by, their colliding with or being struck by vehicles on public roads.

But we will not pay for loss:

**(a)** that occurs while the "livestock" are being transported by common or contract carrier; or

**(b)** if the vehicle involved in striking the animal was owned or operated by an "Insured."

**m. Damage In Course Of Transit - Coverages E and F Only**

We will pay up to $2,000 in any one occurrence for loss of or damage to covered "farm personal property" in course of transit. This $2,000 limit is part of, not in addition to, the applicable Limit of Insurance shown in the Declarations. If a Limit of Insurance higher than $2,000 is specified for "farm personal property" in transit in the Declarations, the higher limit will apply.

**n. Earthquake Loss to "Livestock."**

**o. Flood Loss to "Livestock,"** meaning only loss or damage caused by or resulting from flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not.

**p. Electrocution Of Covered Livestock.**

**q. Attacks On Covered Livestock by Dogs Or Wild Animals.**

This cause of loss does not include loss or damage:

**(1)** to sheep; or

**(2)** caused by dogs or wild animals owned by you, your employees or other persons residing on the "insured location."

**r. Accidental Shooting Of Covered Livestock.**

This cause of loss does not include loss or damage caused by you, any other "Insured," your employees, or other persons residing on the "insured location."

**s. Drowning of Covered Livestock from external causes.**

This cause of loss does not include loss resulting from the drowning of swine under 30 days old.

**t. Loading/Unloading Accidents,** meaning sudden, unforeseen and unintended events causing or necessitating death of covered "livestock" and occurring while they are being unloaded from or loaded onto vehicles used or to be used to transport them.

This cause of loss does not include loss caused by or resulting from disease.

**u. Breakage of Glass or Safety Glazing Material** that is part of a "dwelling," storm door or storm window.

Under this cause of loss, we will not pay for loss if the "dwelling" which contained the glass, including door or window glass, has been "vacant" for more than 30 consecutive days immediately before the loss.

**v. Falling Objects**

But we will not pay for loss or damage to:

**(1)** personal property in the open;

**(2)** the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object; or

**(3)** the falling object itself.

**w. Weight Of Ice, Snow Or Sleet** causing damage to a building or to any property inside a building.

But under this cause of loss we will not pay for loss by pressure or weight of water in any form, whether driven by wind or not, to any:

(1) foundation or retaining wall;

(2) pavement or patio;

(3) awning;

(4) fence;

(5) outdoor equipment;

(6) swimming pool; or

(7) bulkhead, dock, pier or wharf.

x. **Sudden And Accidental Tearing Apart,** cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective system, or an appliance for heating water.

Under this cause of loss we will not pay for loss or damage caused by or resulting from freezing.

y. **Accidental Discharge or Leakage of Water or Steam** as a direct result of the breaking or cracking of any part of a system or appliance containing water or steam. Under this cause of loss we will pay for loss of or damage to covered personal property provided that **Broad** is shown in the Declarations for the coverage applicable to that personal property. If any part of a building or structure to which Coverage A, B or G applies must be torn out and replaced so that repairs can be made to the damaged system or appliance, we will also pay the necessary costs involved, provided that **Broad** is shown in the Declarations for the coverage applying to that building or structure.

We will not pay:

(1) the cost to repair any defect that caused the loss or damage;

(2) for loss or damage caused by continuous or repeated seepage or leakage over a period of weeks, months or years;

(3) for loss or damage caused by accidental discharge or overflow occurring off the "insured location";

(4) for loss or damage caused by discharge or leakage in a building or structure "vacant" for more than 30 consecutive days immediately before the loss.

(5) for loss of damage caused by or resulting from freezing.

z. **Freezing** of a plumbing, heating, air conditioning or automatic fire protection system or of a household appliance.

Under this cause of loss we will not pay for loss or damage which occurs while the "dwelling" or other structure is "vacant," "unoccupied" or being constructed, unless you have used reasonable care to:

(1) maintain heat in the "dwelling" or other structure; or

(2) shut off the water supply and drain the system or appliance of water.

a.a. **Sudden and Accidental Damage** from artificially generated electrical current – Applicable Only To Coverages A, B, C and D.

This cause of loss does not include loss of or damage to tubes, transistors or similar electronic components.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 72 12
(Ed. 03 96)

## AGRIPAK FARM AND RANCH POLICY

## FARM PROPERTY COVERAGE FORM

## SECTION B

### B.3. COVERED CAUSES OF LOSS - SPECIAL

Covered Causes of Loss means the causes as described and limited below in accordance with a corresponding entry of **Special** on the Declarations opposite each Coverage or property to which this insurance applies. However, certain covered property in **Section A** is covered only for particular causes of loss.

When **Special** is shown in the Declarations, Covered Causes of Loss means **Risks Of Direct Physical Loss** unless the loss is excluded in the following paragraphs or in **Section C. Exclusions.**

a. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(1) Fire, if that loss or damage is sustained by buildings or contents usual to tobacco barns as the result of using open fire for curing or drying tobacco in the barn, and occurs:

(a) while tobacco is being fired; or

(b) within the 5-day period following tobacco firing in the barn.

(2) Collapse, except as provided in the Additional Coverage entitled Collapse. But if loss or damage by a Covered Cause of Loss results at the "insured location," we will pay for that resulting loss or damage.

(3) Windstorm or hail to:

(a) Unharvested barley, corn, oats, rye, wheat and other grains, flax, soy beans and sunflowers;

(b) Watercraft or their trailers, furnishings, equipment or outboard motors, unless within a fully enclosed building.

(4) Rain, snow, ice, sleet, sand or dust to household or farm personal property in the open, whether driven by wind or not;

(5) Rain, snow, ice, sleet, sand or dust, whether driven by wind or not, to the interior of any building or structure or the property inside a building or structure, unless the building or structure first sustains damage by any covered cause of loss or the damage itself is a result of thawing of snow, sleet or ice on the building or structure;

(6) Freezing, thawing, or pressure or weight of water or ice whether or not driven by wind, to any:

(a) foundation or retaining wall;

(b) pavement or patio;

(c) fence;

(d) swimming pool; or

(e) bulkhead, dock, pier or wharf.

(7) Discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective system or from within a household appliance:

(a) in the form of continuous or repeated seepage of water or steam over a period of weeks, months or years;

17

COPY OF ORIGINAL

**(b)** that occurs on the "insured location," but is caused by discharge that takes place off the "insured location";

**(c)** caused by or resulting from freezing, and occurring in a building or structure that is "vacant," "unoccupied," or being constructed, unless you have used reasonable care to:

    **(i)** maintain heat in the building or structure; or

    **(ii)** shut off the water supply and drain the system or appliance of water.

**(d)** due to any cause other than freezing and occurring in a building or structure "vacant" for more than 30 consecutive days immediately before the loss.

**(e)** to the extent that the system or appliance from which the water or steam escaped is defective;

**(8)** Freezing of a plumbing, heating, air conditioning or automatic fire protective system or of a household appliance, unless you have used reasonable care to:

    **(a)** maintain heat in the building or structure; or

    **(b)** shut off the water supply and drain the system or appliance of water;

**(9)** Any of the following occurrences, if they take place in buildings or structures covered under **Coverage G** or if the property destroyed or damaged is "farm personal property":

    **(a)** explosion of alcohol stills, steam boilers, steam pipes or steam engines, if you own, lease or operate them;

    **(b)** conditions or events (other than explosions) inside hot water boilers or other heating equipment,

to the extent that they cause loss or damage to these boilers or equipment;

**(c)** rupture, bursting or operating of pressure relief devices; or

**(d)** rupture or bursting due to expansion of the contents of any building or structure, if the expansion is caused by or results from water.

But this exclusion does not apply to loss or damage caused by explosion of gases or fuel within the furnace of any fired vessel or within the valves or passages through which the gases of combustion pass.

**(10)** Under **Coverage A, B,** or **C,** theft from that part of your principal residence, including its grounds and appurtenant structures, which you rent to someone who is not an "Insured";

**(11)** Under **Coverage A, B,** or **G,** theft in or from a building or structure under construction, or of materials and supplies for use in such construction until the building or structure is completed and occupied;

**(12)** Under **Coverage A, B,** or **C,** theft of the following property away from the "insured location":

    **(a)** Property at any residence owned by, rented to, or occupied by, an "Insured," except while an "Insured" is temporarily residing there.

But we will pay for loss by theft of the property of a student who is an "Insured" from a residence away from home, provided the student was there at any time during the 45 days immediately preceding the loss.

    **(b)** Any watercraft, its furnishings, equipment or outboard motors; or

    **(c)** Trailers or campers.

COPY OF ORIGINAL

(13) Inventory shortage;

(14) Absence of any "farm personal prop-
erty" or portable building or structure
when there is no evidence of un-
authorized removal;

(15) Voluntary parting with any property by
you or anyone else to whom you have
entrusted the property if induced to
do so by any fraudulent scheme, trick,
device or false pretense;

(16) Unauthorized instructions to transfer
property to any person or to any
place;

(17) Theft of or vandalism to:

(a) Any device or instrument, for the
transmitting, recording, receiving
or reproduction of sound or pic-
tures, that is operated by power
from the electrical system of a
motor vehicle or mobile agricul-
tural vehicle, unless it is:

(i) Covered Property; and

(ii) permanently installed in the
motor vehicle or mobile ag-
ricultural vehicle.

(b) While in or upon a motor vehicle
or mobile agricultural vehicle, any
tape, wire, record, disc or other
medium for use with any device
or instrument that transmits,
records, receives or reproduces
sound or pictures and that is op-
erated by power from the elec-
trical system of the motor vehicle
or mobile agricultural vehicle.

(18) Vandalism to, or breakage of, glass or
safety glazing material, if the covered
"dwelling" containing it was "vacant"
for more than 30 consecutive days
immediately before loss.

(A "dwelling" being constructed is not
"vacant.")

(19) Dishonest or criminal acts committed
by you, any of your partners, employ-
ees, directors, trustees, authorized re-

presentatives or anyone to whom you
entrust the property for any purpose,
regardless of whether:

(a) that person acts alone or in collu-
sion with others; or

(b) the act is committed during the
hours of employment.

This exclusion does not apply to loss
by acts of destruction committed by
your striking employees, but it does
apply to employee theft.

(20) Transport of "farm personal property,"
except to the extent of:

(a) the coverage afforded under the
Coverage E Coverage Extension
designated in 4.a.; or

(b) $2,000 for "farm personal prop-
erty" destroyed or damaged in
course of transit. This $2,000
limit is part of, not in addition to,
the applicable Limit of Insurance
shown in the Declarations. If a
Limit of Insurance higher than
$2,000 is specified in the Dec-
larations for "farm personal
property" in transit, the higher
limit will apply.

(21) Any cause included in the following list
if that loss or damage is sustained by
farm machinery:

(a) Collision, upset or overturn of
farm machinery or equipment, to
the extent of any loss of or dam-
age to the tires or inner tubes of
such machinery or equipment. But
we will pay for the loss of or
damage to the tires or inner tubes
if the same accident causes other
covered loss to the same ma-
chinery or equipment.

(b) Contact between a tractor and an
implement during hitching or un-
hitching operations.

(22) Artificially generated electric current,
including electric arcing, that disturbs:

19

(a) Any electrical devices, appliances or wires;

(b) Under **Coverages A, B, C, D, E, F,** and **G** any tubes, transistors or similar electronic components.

But:

(i) Under **Coverages A, B, C, D, E, F,** and **G** we will pay for loss of or damage to electric devices, appliances or wires, provided the damage is sudden and accidental.

(ii) If loss by fire results, we will pay for that resulting loss or damage.

(23) Smoke, vapor or gas from agricultural smudging or industrial operations, to any building, structure or personal property.

(24) The following causes of loss to any building, structure or personal property:

(a) wear and tear;

(b) rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(c) smog;

(d) settling, cracking, shrinking or expansion;

(e) birds, vermin, rodents, insects or domestic animals;

(f) mechanical breakdown, including rupture or bursting caused by centrifugal force;

(g) dampness or dryness of atmosphere;

(h) changes in temperature or extremes of heat or cold, including freezing. But this exclusion does not apply to freezing of a plumbing, heating, air conditioning or automatic fire protective system

or freezing of a household appliance, if you have used reasonable care to:

(1) maintain heat in the building or structure; or

(2) shut off the water supply and drain the system or appliance of water.

(i) marring or scratching;

(j) unauthorized intentional destruction.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

In the event of water (or steam) damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliances, we:

(i) will also pay the necessary cost of tearing out and replacing any part of a covered building or structure so that the damaged system or appliance can be repaired, provided that **Special** Causes of Loss is shown in the Declarations for the Coverage. **(Coverage A, B** or **G)** under which the building or structure is covered; but

(ii) will not pay the cost to repair any defect of the system or appliance.

(25) We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

(a) Weather conditions. But this exclusion applies only if weather conditions contribute in any way with a cause or event excluded in **Section C.** to produce the loss or damage.

(b) Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

(c) Faulty, inadequate or defective:

    (i) planning, zoning, development, surveying, siting;

    (ii) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    (iii) materials used in repair, construction, renovation or remodeling; or

    (iv) maintenance;

of part or all of any property on or off the "insured location."

(26) We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the release, discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified cause of loss."

(27) The following causes of loss to any farm personal property:

    (a) infection, disease, sickness, fungus or parasites;

    (b) inoculating or giving medical treatment;

    (c) contaminated feed, water, medication, drugs, other feed ingredients;

    (d) huddling, piling, fright or stampeding;

    (e) heat prostration or exhaustion, freezing, shrinkage, evaporation, loss of weight, change in flavor or color or texture unless a cause of loss not otherwise excluded ensues, and then we will be liable for only such ensuing loss;

    (f) heating or cooling equipment failure, malfunction or breakdown;

    (g) delay, loss of market, loss of market value, loss of use, or consequential loss;

    (h) natural causes or age;

    (i) blown or burned out fuses;

    (j) tripped or open circuit breakers;

    (k) poison; or

    (l) contamination.



**GREAT**AMERICAN. INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 72 21
(Ed. 07 96)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AGRIPAK FARM AND RANCH POLICY

## SCHEDULED PERSONAL PROPERTY COVERAGE

This endorsement modifies insurance provided under the following:

FARM PROPERTY COVERAGE FORM

### SCHEDULE A*

| | Kind of Personal Property ** | Limit of Insurance |
|---|---|---|
| (A) | Jewelry | $ 22,500. |
| (B) | "Furs" | $ |
| (C) | "Cameras" | $ |
| (D) | "Musical instruments" | $ |
| (E) | Silver, silverplated ware, goldware, goldplated ware and pewterware, but not pens, pencils, flasks, smokers' articles or jewelry | $ |
| (F) | "Golfers' equipment" | $ |
| (G)(1) | Fine arts | $ |
| (G)(2) | Fine arts with breakage coverage, exclusion in Paragraph 3.b. (5)(b) is deleted | $ |
| (H) | "Postage stamps" | $ |
| (I) | "Rare and current coins" | $ |
| (J) | Other coverage | $ |

1. Certain kinds of **PERSONAL PROPERTY** under **Coverage C - Household Personal Property** are subject to Special Limits of Insurance which will apply in excess of the Limit of Insurance shown above for like kinds.

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations

** Refer to Company for schedule of items.

## 2. COVERAGE EXTENSIONS

### a. "Cameras" and "Musical Instruments"

If during the policy period, you acquire "cameras" or "musical instruments" of a type already covered under this endorsement, we will cover this property for up to 30 days. The most we will pay for loss of or damage to such property is the lesser of:

(1) 25% of the total Limit of Insurance shown in the Schedules for that type of property; or

(2) $10,000

You must report such property to us within 30 days of the date of acquisition and pay any additional premium due. If you do not report such property, coverage will automatically end 30 days after the date of acquisition.

### b. Fine Arts

If Limits of Insurance are shown in the Schedules for fine arts, objects of art that you acquire during the policy period will be Covered Property to the extent of their actual cash value. The most we will pay for loss of or damage to such property is 25% of the Limit of Insurance shown in the Schedule for fine arts.

You will report such property to us within 90 days of the date of acquisition and will pay any additional premium due. If you do not report such property, coverage will automatically end 90 days after the date of acquisition.

## 3. CAUSES OF LOSS AND EXCLUSIONS

With respect to the property for which Limits of Insurance are shown in the Schedule, the following apply:

### a. Covered Causes of Loss

Covered Causes of Loss means **Risks of Direct Physical Loss** unless the loss is excluded in Paragraph **b., Exclusions,** below.

### b. Exclusions

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(1) Wear amd tear, gradual deterioration or inherent vice.

(2) Insects or vermin.

(3) War, including the following and any consequence of any of the following:

Case 4:09-cv-00017-HSM-SKL   Document 1   Filed 02/17/09   Page 36 of 118   PageID #: 36

(a) undeclared war, civil war, insurrection, rebellion or revolution;

(b) warlike act by a military force or military personnel; or

(c) destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

(4) Nuclear Hazard, to the extent set forth in the following Nuclear Hazard Clause:

Nuclear Hazard Clause

(a) Nuclear Hazard means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(b) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke.

(c) The insurance afforded under this endorsement does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

(5) If fine arts are covered:

(a) damage caused by any repairing, restoration or retouching process;

(b) breakage of art glass windows, glassware, statuary, marble, brick-a-brac, porcelains and similar fragile articles. But we will pay for loss by breakage caused by:

(i) fire or lightning;

(ii) explosion, aircraft or collision;

(iii) windstorm, earthquake or flood;

(iv) vandalism or theft; or

(v) derailment or overturn of a conveyance; and

(c) any cause whatever to property on exhibition at fairgrounds or premises of national or international expositions, unless the premises are covered by this policy.

(6) If collections of "postage stamps" or "rare and current coins" are covered.

(a) fading, creasing, denting, scratching, tearing or thinning;

(b) transfer of colors, inherent defect, dampness, extremes of temperature or depreciation;

or

(c) any damage from being handled or worked on;

(d) disappearance of individual stamps, coins or other articles unless the item is:

    (i) described and scheduled with a specific Limit of Insurance; or

    (ii) mounted in a volume and the page it is attached to is also lost;

(e) any cause whatever, to property in the custody of transportation companies;

(f) shipments by mail other than registered mail;

(g) theft from any unattended automobile unless the stamps or coins are being shipped as registered mail; or

(h) any cause whatever, to property not part of a stamp or coin collection.

(7) Any cause to golf balls, except for:

(a) fire; and

(b) burglary, but only if there are visible marks of forcible entry into the building, room or locker in which they were contained at the time of loss.

## 4. DEDUCTIBLE

No deductible applies to the coverage afforded under this endorsement.

## 5. ADDITIONAL CONDITIONS

The following Conditions applicable to the insurance afforded under this endorsement are added to Paragraph 4. Coverage C. Conditions:

**Loss Conditions**

### a. Reinstatement of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss of a scheduled item, in which event we will refund the unearned premium on that item.

**b. Valuation**

**(1) Fine Arts**

For each scheduled article we will pay the amount shown as the agreed upon value of that article.

In case of loss to a pair or set, we will pay you the full value of the set as shown in the Schedule and you will surrender the remaining article or articles of the set to us.

**(2) Parts**

In case of loss to any part of Covered Property consisting of several parts when complete, we will pay only the value of the destroyed or damaged part.

**(3) "Postage Stamps" or "Rare and Current Coin" Collections**

In case of loss to any scheduled item, the amount to be paid will be determined in accordance with Paragraph 5.b.(4) below.

When coins or stamps are covered on a blanket basis, we will pay the cash market value as of time of loss but not more than $1,000 on any unscheduled coin collection nor more than $250 for any one stamp, coin or individual article or any one pair, strip, block, series sheet, cover, frame or card.

We will not pay a greater proportion of any loss on blanket property then the amount insured on blanket property bears to the cash market value as of time of loss.

**(4) Other Property**

The value of property will be the least of the following amounts:

**(a)** the actual cash value of the property;

**(b)** the cost of reasonably restoring the property to its condition immediately before loss; or

**(c)** the cost of replacing the property with substantially identical property.

In the event of loss, the value of property will be determined as of the time of loss.

**c. Limit of Insurance**

The Limit of Insurance shown in Schedule A or in the Declarations is the total of all items scheduled on file with the Company. The most we will pay for any damaged or destroyed item will be the limit per item on file with the Company.

**GENERAL CONDITIONS**

a.  **Coverage Territory**

We cover property wherever located. However, Fine Arts are covered only within the United States and Canada.

b.  **Packing of Fine Arts**

You agree that the Covered Property will be handled by competent packers.

6.  **ADDITIONAL DEFINITIONS**

The following Definitions apply with respect to coverage granted under this endorsement:

a.  **"Cameras"** means cameras, projection machines, films and related equipment.

b.  **"Furs"** means furs and garments trimmed with fur or consisting principally of furs.

c.  **"Golfers equipment"** includes your other clothing while contained in a locker when you are playing golf.

d.  **"Musical Instruments"** means musical instruments and related equipment.

e.  **"Postage stamps"** includes the following owned by or in the care, custody or control of the "Insured":

(1) due, envelope, official, revenue, match and medicine stamps;

(2) covers, locals, reprints, essays, proofs and other philatelic property; and

(3) books, pages and mounting of Items in (1) and (2) above.

f.  **"Rare and Current Coins"** includes the following owned by or in the care, custody or control of the "Insured":

(1) medals, paper money, bank notes;

(2) tokens of money and other numismatic property; and

(3) coin albums, containers, frames, cards and display cabinets in use with coin collections.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 72 90**
(Ed. 01 03)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

### SCHEDULE*

Terrorism Premium (Certified Acts) $

Additional information, if any, concerning the terrorism premium:

$ 0.00

Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2002

AP 72 90 (Ed. 01/03) PRO                         (Page 1 of 1)

GREATAMERICAN. INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 88 02 (Ed. 05 90)

## AGRIPAK FARM AND RANCH POLICY

## FARM PROPERTY GENERAL ENDORSEMENT

### MACHINERY SCHEDULE
- - - - - - - - - - - - - - - - - -

| DESCRIPTION | LIMIT OF INSURANCE |
|---|---|
| 1. KUBOTA 4700 TRACTOR - SN M47040058 | $ 15,000. |
| 2. GEHL SL4835 SKID LOADER - SN 10706 | 15,000. |
| 3. PRO-TUFF EXCAVATOR - SN N5535200336 | 19,000. |
| 4. '00 JOHN DEERE 3TNE84LJK TRACTOR - SN XC113015D029254X | 13,000. |
| 5. KUBOTA D905 TRACTOR - SN YE5961 | 10,000. |
| 6. KAMATSU D21A-6 BULLDOZER - SN 66542 | 15,000. |
| 7. '97 HONDA FORMAN - SN 478TE2008VA219793 | 4,000. |
| 8. YAMAHA GOLF CART - SN J93101589 | 3,500. |
| 9. HONDA 150 CRF15053 - SN 9C2KE01043R004934 | 2,800. |
| 10. HONDA YA222 - SN TRX350FM3 | 5,500. |
| | - - - - - - - - - - |
| TOTAL | $102,800. |



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 72 06
(Ed. 09 96)

## AGRIPAK FARM AND RANCH POLICY

## FARM PROPERTY COVERAGE FORM

### SECTION A

### COVERAGE E - SCHEDULED FARM PERSONAL PROPERTY

#### A. COVERAGE

We will pay for direct physical loss of or damage caused by or resulting from any Covered Cause of Loss to Covered Property at the "insured location" described in the Declarations, or elsewhere as expressly provided below.

**Coverage E - Scheduled Farm Personal Property**

1. **Covered Property**

All of the following are Covered Property under **Coverage E** of this Coverage Form, provided a Limit of Insurance is shown in the Declarations for the specific type of property:

a. (1) grain, threshed seeds and beans, ground feed, silage, and manufactured and blended "livestock" feed in buildings or structures or in sacks, wagons or trucks; and

(2) grain in stacks, shocks, swaths or piles in the open, but for this property fire and lightning, vehicles and theft are the only Covered Causes of Loss.

b. (1) hay, straw and fodder in buildings or structures; and

(2) hay, straw and fodder in stacks, windrows or bales, but for this property fire or lightning, windstorm or hail, vehicles and theft are the only Covered Causes of Loss.

A stack means hay, straw or fodder in one area separated by a clear space of 100 feet or more from any other hay, straw or fodder in the open.

c. Farm products, materials and supplies shown in the Declarations. These include farm materials and related packing materials and containers usual to the operations of a farm, but not hay, grain or any growing crops.

d. "Poultry":

(1) in the open only if so described in the Declarations; or

(2) in any building designated for "poultry" in the Declarations.

e. Trays, boxes and box shook, each item or set in the proportion that its value bears to the total value of all trays, boxes and box shook covered under this Coverage Form.

f. Computers and related software used principally as aids in farm management.

But an item of software is Covered Property only up to the amount required to replace it as a prepackaged program, or in unexposed or blank form, whichever is greater.

g. Miscellaneous equipment, usual or incidental to the operation of a farm, including machinery, vehicles, tools and supplies of all kinds.

But such miscellaneous farm equipment does not include:

(1) threshing machines, tractors, combines, cotton pickers, hay balers, harvesters, peanut diggers, potato diggers and pickers, crop driers or sawmill equipment.

2 5

(2) automobiles, trucks, motorcycles, motorized bicycles or tricycles, mopeds, dirt bikes, snowmobiles, three and four—wheel all—terrain vehicles; mobile homes, house trailers; vehicles primarily designed or licensed for road use (other than farm wagons and farm trailers); watercraft or aircraft; or the equipment, tires or parts of any of these;

(3) liquified petroleum or manufactured gas or fuel, or their containers;

(4) bulk milk tanks, bulk feed tanks or bins attached to buildings or structures; barn cleaners, pasteurizers or boilers; any permanent fixtures within or attached to a building;

(5) brooders;

(6) fences, windchargers, windmills or their towers;

(7) outdoor radio or television equipment or wiring; private power and light poles;

(8) irrigation equipment;

(9) portable buildings and portable structures;

(10) household personal property or property usual to a "dwelling"; or

(11) property more specifically covered under another Coverage or Coverage Form of this or any other policy.

h. Borrowed farm machinery, vehicles and equipment, meaning property:

(1) that is usual or incidental to farming operations;

(2) that is in your care, custody or control; and

(3) in which you have no interest as owner or lienholder.

But such borrowed farm machinery, vehicles and equipment do not include:

(1) automobiles, trucks, motorcycles, motorized bicycles or tricycles, mopeds, dirt bikes, snowmobiles, three and four—wheel all—terrain vehicles; mobile homes, house trailers; vehicles primarily designed or licensed for road use (other than farm wagons and farm trailers); watercraft or aircraft; or the equipment, tires or parts of any of these; or

(2) dealers' demonstration machinery, vehicles or equipment.

Borrowed farm machinery is Covered Property under this Coverage Form only to the extent that it is not covered under another Coverage Form of this or any other policy of the "Insured."

i. Farm machinery, vehicles and equipment on or away from the "insured location."

j. "Livestock" on or away from the "insured location."

But we do not cover "livestock" while:

(a) at public stockyards, sales barns or sales yards; or

(b) at packing plants or slaughter houses.

k. Bees.

l. Worms.

m. Fish.

n. Other animals.

o. Portable buildings and portable structures that you own.

p. Cellular telephones including accessories and antennas.

COPY OF ORIGINAL

   (4) If you choose to apply the option provided under this Coverage Extension, the greatest proportion we will pay of any one loss is the amount we would have paid if:

     (a) every policy covering the property involved in the loss had provided the same option as this Coverage Extension; and

     (b) you had applied that option the same way under every policy.

**b.** Replacement Machinery, Vehicles and Equipment Newly Purchased or Leased

A Special Limit of Insurance equal to $50,000 plus the corresponding limit specified in the Declarations for individually scheduled items of Farm Machinery, Vehicles and Equipment applies to any item of property purchased or leased as a replacement of such machinery, vehicle or equipment.

The additional $50,000 coverage will end:

   (1) 30 days after the date of purchase of the replacement item; or

   (2) when this policy expires;

whichever comes first.

In no event will we pay more than the actual cash value as of the time of loss.

A newly purchased or leased vehicle or item of machinery or equipment is covered under this Coverage Extension only to the extent that it is not covered under another Coverage or Coverage Form of this or any other policy of the "Insured."

**c.** Additional Machinery, Vehicles and Equipment Newly Purchased, Leased or Rented

   (1) Coverage on such items of farm equipment, machinery and vehicles as tractors, combines, harvesters, corn pickers and hay balers, will extend to apply to newly purchased, leased or rented additional farm equipment, machinery and vehicles.

   (2) The most we will pay under this Coverage Extension is $125,000 for loss of or damage to all such Newly Purchased, Leased or Rented Additional Farm Equipment, Machinery and Vehicles. This $125,000 limit is part of, not in addition to, the applicable Limit of Insurance.

   (3) When values for Newly Purchased, Leased or Rented Additional Farm Equipment, Machinery and Vehicles are reported under this Coverage Extension, additional premium for these values will be due and payable from the date of purchase, lease or rental.

   (4) None of the following is covered under this Coverage Extension:

     (a) automobiles, trucks, motorcycles, motorized bicycles or tricycles, mopeds, dirt bikes, snowmobiles, three-wheel all-terrain vehicles; mobile homes or house trailers; vehicles primarily designed or licensed for road use (other than farm wagons and farm trailers); watercraft, aircraft; or their equipment, tires or parts;

     (b) liquified petroleum or manufactured gas or fuel, or their containers;

     (c) brooders, fences, windchargers, windmills or their towers; or

     (d) any farm equipment, machinery, or vehicles purchased as replacements of equipment, machinery, vehicles or equipment specifically described in the Declarations.

   (5) This Coverage Extension will end:

     (a) 30 days after the date of acquisition of the additional item; or

**2. Property Not Covered**

Under **Coverage** E. Covered Property does not include:

a. growing crops, trees, plants, shrubs or lawns;

b. household personal property or property usual to a "dwelling";

c. magnetic recording or storage media for electronic data processing, such as cell, disc, drum, film and tape, over or above their replacement value:

   (1) as prepackaged software programs; or

   (2) in unexposed or blank form;

   whichever is greater.

d. any permanent fixtures within or attached to a building; or

e. outdoor radio or television equipment or satellite system including all electronic components; private power and light poles.

**3. Coverage E Special Limits Of Insurance**

Under **Coverage E.,** certain individual items of "farm personal property" are subject to Special Limits of Insurance. These Special Limits are part of, not in addition to, the applicable Limits of Insurance shown in the Declarations, and apply in excess of any applicable Deductible.

a. If no specific stack limit is shown in the Declarations for hay, straw or fodder in the open, the limit will be $10,000 on any one stack.

b. For covered "poultry," the Limit of Insurance per bird under any provision of this Coverage Form applicable to "poultry" will be its cash market value as of the time of loss.

c. The Limit of Insurance on any one item of miscellaneous equipment is $2,500.

d. The most ,we will pay for loss of or damage to any one head of "livestock" (other than animals individually described and specifically covered under this coverage) is the least of the following amounts:

   (1) 120% of the amount obtained by dividing the total insurance on the class and type of animal involved by the number of head of that class and type owned by you as of the time of loss.

   (2) The actual cash value of the animal destroyed or damaged.

   (3) $3,000.

   Each horse, mule or head of cattle under one year of age as of time of loss will be counted as 1/2 head.

**4. Coverage E Coverage Extensions**

a. Grain, Hay, Straw or Fodder and Miscellaneous Equipment Away From the "Insured Location"

   (1) You may apply up to:

      (a) 25% of the Limit of Insurance shown in the Declarations for:

         (i) grain;

         (ii) hay in buildings or structures; and

         (iii) hay, straw and fodder in the open;

      (b) 25% of the Limit of Insurance shown in the Declarations for Miscellaneous Equipment Usual or Incidental to the Operation of a Farm;

      to such properties as respectively described while they are away from the "insured location."

   (2) This Extension is part of, not in addition to, the applicable Limit of Insurance.

   (3) This Coverage Extension does not apply to property:

      (a) stored or being processed in manufacturing plants, public elevators, warehouses, seed houses or commercial drying plants;

      (b) in public sales barns or public sales yards; or

**(b)** when this policy expires;

whichever comes first.

**(6)** Newly Purchased, Leased or Rented Additional Farm Equipment Machinery and Vehicles are covered under this Coverage Extension only to the extent that they are not covered under another Coverage or Coverage Form of this or any other policy of the "Insured."

**d.** Additional Acquired Livestock

**(1)** If **Coverage E** covers "livestock":

  **(a)** specifically declared and described in the **Coverage E Declarations;** or

  **(b)** with separated Limits of Insurance per class shown in the **Coverage E Declarations;**

  we will cover additional "livestock" you acquire during the policy period, for up to 30 days from acquisition.

**(2)** The most we will pay under this Coverage Extension is the lesser of:

  **(a)** the actual cash value of such property; or

  **(b)** 25% of the total of the Limits of Insurance shown in the Coverage E Declarations for:

    **(i)** specifically declared and described "livestock"; and

    **(ii)** "livestock" with separate limits per class.

**(3)** You must report such property within 30 days from the date acquired and pay any additional premium due. If you do not report such property, coverage will end 30 days after the date the property is acquired.

**5. Coverage E Conditions**

**Coverage E** is subject to the following Loss Condition as well as to the Farm Property Conditions and the Common Policy Conditions.

Loss Conditions

**a.** Pro Rata Distribution — Applicable only to Grain, Hay, Seed, Chemicals, Produce, Trays, Boxes, Box Shooks, Straw and Fodder, Miscellaneous Equipment, Irrigation Equipment, Portable Buildings and Structures, and Poultry.

The most we will pay for loss of or damage to any category of covered "farm personal property" described in the heading of this condition in any one occurrence is the proportion that the scheduled Limit of Insurance in the Declarations bears to the total value of owned covered property in that category as of the time of loss.

**b.** Livestock, Poultry, Bees, Fish, Worms and Other Animals

With respect to "livestock," "poultry," bees, fish, worms and other animals, the term loss means death or destruction caused by, resulting from or made necessary by a covered cause of loss.

**c.** Valuation

In the event of loss of or damage to covered "farm personal property," we will settle at actual cash value as of time of loss, but we will not pay more than the amount necessary for repair or replacement.

**d.** Coverage Territory

We cover loss or damage commencing within the coverage territory. The coverage territory is:

  **(1)** the United States of America;

  **(2)** Puerto Rico; and

  **(3)** Canada.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AP 72 08
(Ed. 03 96)

## AGRIPAK FARM AND RANCH POLICY

### FARM PROPERTY COVERAGE FORM

### SECTION A

### COVERAGE G - OTHER FARM STRUCTURES

#### A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the "insured location" described in the Declarations, or elsewhere as expressly provided below, caused by or resulting from any Covered Cause of Loss.

#### Coverage G - Other Farm Structures

##### 1. Covered Property

All of the following are Covered Property under **Coverage G** of this Coverage Form, provided a Limit of Insurance is shown in the Declarations for the specific type of property:

a. farm buildings and structures other than "dwellings," including attached sheds and permanent fixtures;

b. silos individually described in the Declarations or on a schedule, whether or not attached to buildings;

c. portable buildings and portable structures;

d. all fences (except field and pasture fences), corrals, pens, chutes and feed racks;

e. outdoor radio and TV equipment, antennas, masts and towers;

f. Improvements and Betterments. Improvements and Betterments are additions, alterations, fixtures or installations made part of the described building, but do not include items that may be legally removed by an "Insured." If you are a tenant, we cover

your use interest in the improvements and betterments you make at your expense to a building you do not own at the "insured location"; and

g. Building Materials and Supplies:

(1) for use in building, altering or repairing farm buildings or structures; and

(2) kept on or adjacent to the "insured location."

##### 2. Property Not Covered

Covered Property does not include:

a. land (including land on which the other farm structure is located);

b. water;

c. field or pasture fences;

d. foundations, if below ground, of buildings or structures;

e. pilings, piers, wharves or docks; or

f. the cost of excavations, grading, filling or backfilling.

##### 3. Coverage G Coverage Extensions

a. Private Power and Light Poles

We will pay up to $500 in any one occurrence as an additional amount of insurance for direct physical loss of or damage to private power and light poles, outside wiring and attachments. Attachments include attached switch boxes, fuseboxes and other electrical equipment mounted on poles you own

Case 4:09-cv-00017-HSM-SKL Document 1 Filed 02/17/09 Page 49 of 118 PageID #: 49

at the "insured location." The $500 Limit applies in excess of any applicable Deductible.

If a higher Limit of Insurance on private power and light poles are shown in the Declarations, the Limits of Insurance shown will apply.

**b.** New Construction

    **(1)** We will pay up to $125,000 for direct physical loss of or damage to new, permanent farm structures at the "insured location" including materials and supplies for use in their construction.

    **(2)** This Coverage Extension applies only:

        **(a)** to structures that are not otherwise covered under this or any other policy; and

        **(b)** to loss caused by aircraft, explosion, fire, lightning, riot or civil commotion, smoke, vandalism, vehicles, windstorm or hail.

    **(3)** Insurance on each farm structure covered under this Coverage Extension will end as soon as any of the following takes place:

        **(a)** You report values to us. (We will charge you an additional premium for values reported from the date construction begins or the materials and supplies are delivered.)

        **(b)** 60 days have elapsed since the first date of delivery of the materials and supplies.

        **(c)** This policy expires.

    **(4)** This Coverage Extension is part of, not in addition to, the applicable Limit of Insurance.

**4. Coverage G Conditions**

**Coverage G** is subject to the following Loss Conditions as well as to the Farm Property Conditions and the Common Policy Conditions.

Loss Conditions

**a.** Fences, Corrals, Pens, Chutes, Feed Racks

The most we will pay in any one occurrence of loss of or damage to covered fences, corrals, pens, chutes and feed racks is the proportion that the applicable Limit of Insurance shown in the Declaration bears to the value of all covered fences, corrals, pens, chutes and feed racks you own as of the time of loss.

**b.** Portable Buildings and Portable Structures

The most we will pay in any one occurrence of loss of or damage to portable buildings or portable structures is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the value of all portable buildings and portable structures you own as of the time of loss.

But this Condition does not apply to any portable building or portable structure individually covered under its own Limit of Insurance shown in the Declarations.

**c.** Valuation

    **(1)** Property Other than Improvements and Betterments

        **(a)** The basis for loss settlement will be determined by the ratio of the applicable Limit of Insurance for the specific building to the full replacement cost of the destroyed or damaged Covered Property. When determining the full replacement cost, the values of the following will be disregarded:

(1) excavations;

(2) foundations; and

(3) piers and other supports below the undersurface of the lowest basement floor; or, where there is no basement, those below the surface of the ground inside the foundation walls.

Also underground flues, pipes, wiring and drains.

(b) If the Limit of Insurance on the damaged structure is at least 80% of its full replacement cost as of the time of loss, we will settle the loss based on the smallest of the following amounts:

(1) The cost to replace the damaged part of the structure with equivalent construction for use on the same premises.

(2) The amount actually and necessarily spent to repair or replace the structure.

(3) The applicable Limit of Insurance.

(c) If the Limit of Insurance on the damaged structure is less than 80% of its full replacement cost as of the time of loss, we will settle on the basis of (1) or (2) below, whichever is larger, but not more than the applicable Limit of Insurance:

· (1) The actual cash value, as of time of loss, of the damaged part of the structure.

(2) A proportion of the cost to repair or replace the damaged part of the structure, without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

However, we will not pay more than the applicable Limit of Insurance, regardless of whether (1) or (2) above applies.

(d) If your loss qualifies for payment on a replacement cost basis, but the cost of repair or replacement is more than either $1,000 or 5% of the applicable Limit of Insurance, the only basis on which we will settle pending completion of repairs or replacement is actual cash value, as of time of loss, of the damaged part of the structure. In case of such a loss you can make an initial claim for payment on the actual cash value basis, and later make a supplementary claim for replacement cost payment. If you elect to exercise this option, you must notify us of your intention within 180 days of the occurrence of the loss.

(2) Improvements and Betterments

(a) If repair or replacement is done at the expense of the "Insured" within 12 months after the loss, we will settle the loss on the basis of actual cash value as of time of loss.

(b) If repair or replacement is not done within 12 months after loss, we will settle on

the basis of a proportion of the cost of repair or replacement. This proportion will equal the ratio of (i) below to (ii) below.

(i) The period of time from the loss or damage to the expiration of the lease.

(ii) The period of time from the installation of the improvements to the expiration of the lease.

Lease means the lease, whether written or oral, in effect at the time of the loss.

If your lease contains a renewal option and if you exercise that option, the expiration of the renewal option period will replace the expiration of the lease in (i) and (ii) above.

(c) If repair or replacement is not done at the expense of others for the use of the "Insured," we provide no insurance.

(3) Glass Replacement

We will settle on the basis of the cost to replace damaged glass with safety glazing material, if required by law.



**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 72 15**
(Ed. 10 97)

# AGRIPAK FARM AND RANCH POLICY

# FARM PROPERTY COVERAGE FORM

Section C. Exclusions
Section D. Additional Coverages
Section E. Limits of Insurance
Section F. Deductible
Section G. Farm Property Conditions
Section H. Definitions

## C. EXCLUSIONS

The following Exclusions apply when any or all of the Covered Causes of Loss, **Basic, Broad** or **Special,** are specified in the Declarations.

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### 1. Ordinance or Law

The enforcement of any ordinance or law:

**a.** regulating the construction, use or repair of any property; or

**b.** requiring the tearing down of any property, including the cost of removing its debris.

### 2. Earth Movement

**a.** Any earth movement (other than sink-hole collapse), such as earthquake, landslide, mine subsidence or earth sinking, rising or shifting.

But:

**(1)** If loss or damage by fire or explosion results, we will pay for that resulting loss or damage; or

**(2)** If loss or damage to:

**(i)** farm machinery, vehicles and equipment covered for the Special Causes of Loss; or

**(ii)** "livestock";

is caused by earthquake, this Earth Movement exclusion does not apply to such loss or damage.

**b.** Volcanic eruption, explosion or effusion. But if loss or damage by fire or volcanic action results, we will pay for that resulting loss or damage.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(1)** airborne volcanic blast or airborne shock waves;

**(2)** ash, dust or particulate matter; or

**(3)** lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to Covered Property.

### 3. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

### 4. Intentional Loss

We will not pay for loss or damage arising out of any act committed:

a. by or at the direction of any "Insured"; and

b. with the intent to cause a loss.

### 5. Nuclear Hazard

Nuclear reaction or radiation, or radioac-tive contamination, however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

### 6. Off-Premises Services

The failure of power or other utility ser-vice supplied to the "insured location," however caused, if the failure occurs on or away from the "insured location," ex-cept as provided under **Coverage C.**

But if loss or damage by a Covered Cause of Loss results, we will pay for that re-sulting loss or damage.

### 7. War and Military Action

a. war, including undeclared or civil war;

b. warlike action by a military force, in-cluding action in hindering or defend-ing against an actual or expected at-tack, by any government, sovereign or other authority using military personnel or other agents; or

c. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### 8. Water

a. flood, surface water, waves, tides, ti-dal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

b. mudslide or mudflow;

c. water that backs up from a sewer or drain; or

d. water under the ground surface pressing on, or flowing or seeping through:

(1) foundations, walls, floors or paved surfaces;

(2) basements, whether paved or not; or

(3) doors, windows or other open-ings.

Except:

(1) if loss or damage by fire, explo-sion or sprinkler leakage results, we will pay for that resulting loss or damage; or

(2) if loss or damage to:

(i) farm machinery, vehicles and equipment covered for the **Special** Causes of Loss; or

(ii) "livestock";

is caused by water as described in **8.a.** above, this Water exclu-sion does not apply to such loss or damage.

## D. ADDITIONAL COVERAGES

### 1. Additional Coverages To Coverages A, B, C, E, F and G

a. Debris Removal

(1) We will pay your expense to re-move debris of Covered Property caused by or resulting from a Covered Cause of Loss that oc-curs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Except as provided in **D.1.a.(4)** below, the most we will pay un-der this Additional Coverage is 25% of:

### b. Cab Glass Coverage

The following Additional Coverage ap-
plies when Special Covered Causes of
Loss is specified in the Declarations
for **Coverage E or F** for farm machin-
ery or equipment.

We pay for loss or damage caused by
breakage of glass that is part of the
cab of the farm machinery or equip-
ment which is covered property under
**Coverage E or F.**

The **DEDUCTIBLE, LOSS PAYMENT**
and **GLASS REPLACEMENT** Provisions
of the **FARM PROPERTY COVERAGE
FORM** do not apply to this coverage.

In the event of loss, we will pay no
more than the cost to repair glass with
similar property, or replace with safe-
ty glazing material when required by
law.

### 3. Additional Coverage To Coverages E, F Or G

Extra Expense

We will pay up to $2,000, unless a higher
Limit of Insurance is shown in the Dec-
larations, for the actual and necessary ex-
penses you incur to resume normal farm-
ing operations interrupted as the result of
direct physical loss of or damage to Cov-
ered Property by a Covered Cause of
Loss.

Coverage for such extra expense is not
limited by the expiration of this policy. But,
we will not pay extra expense you incur
after the period required for repair, re-
building or replacement of Covered Prop-
erty.

Extra Expense Coverage does not include
loss caused by or resulting from the en-
forcement of any ordinance or law which
requires any "Insured" or others to test
for, monitor, clean up, remove, contain,
treat, detoxify, neutralize, or in any way
respond to, or assess the effects of,
"pollutants."

No deductible applies to this Additional
Coverage.

### 4. Additional Coverage - COLLAPSE

The following Additional Coverage applies
when **Broad** or **Special** Covered Causes
of Loss is specified in the Declarations:

We will pay for loss or damage caused by
or resulting from risks of direct physical
loss involving collapse of a building or any
part of a building caused only by one or
more of the following:

a. the "specified causes of loss" or
breakage of building glass, all only as
insured against in this Coverage Form;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of people or personal prop-
erty;

e. weight of rain that collects on a roof;

f. use of defective material or methods
in construction, remodeling or renova-
tion if the collapse occurs during the
course of the construction, remodeling
or renovation.

Under Item **b., c., d., e.,** or **f.,** we will
not pay for loss of or damage to any
of the following types of property, if
otherwise covered in this Coverage
Form, unless the loss or damage is a
direct result of the collapse of a
building:

Foundations or retaining walls; under-
ground pipes, flues or drains; cess-
pools or septic tanks; walks, road-
ways, patios and other paved surfaces;
awnings; fences; outdoor equipment
including yard fixtures; swimming
pools; bulkheads, docks, piers or
wharves.

Collapse does not include settling,
cracking, shrinkage, bulging, expansion
or indentation.

This Additional Coverage will not in-
crease the Limits of Insurance pro-
vided in this Coverage Form.

## 5. Additional Coverage - Pollutant Clean Up and Removal

We will pay your expense to extract "pollutants" from land or water at the "insured location" if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants." But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage, for each location listed in the Declarations as an "insured location," is $15,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

## 6. Additional Coverage - Personal Property of Others

We will pay up to $2,500 for loss or damage to personal property of others in your care, custody or control. However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

## 7. Additional Coverage to Coverages E or F

Borrowed Farm Machinery or Equipment

a. If a Limit of Insurance for Farm Machinery or Equipment is shown in the Declarations for **Coverage E** and/or **Coverage F**, the following Additional Coverage is provided under this policy:

We will pay up to $50,000 for borrowed farm machinery, vehicles and equipment' as described and limited in Item **h.** of **1. Covered Property** under **Coverage E**. This limit is additional insurance; however, borrowed farm machinery, vehicles and equipment are covered under this endorsement only to the extent that they are not covered under another Coverage Form of this or any other policy of the "Insured."

This additional coverage will end:

1. 30 days after the machinery, vehicle or equipment is borrowed; or

2. when this policy expires;

whichever comes first.

b. Covered Causes of Loss. The Covered Causes of Loss for the coverage provided under this endorsement are those applicable to the "Insured's" "Farm Personal Property" as indicated in the Declarations. If two or more Causes of Loss entries appear in the Declarations for covered Farm Personal Property, the broadest Causes of Loss category will apply to the coverage provided under this endorsement.

c. **Section G, Condition 8. Other Insurance,** under Farm Property Conditions in the **Farm Property Coverage Form,** does not apply to the coverage provided under this endorsement.

## 8. Additional Coverage to Coverages A, B, C and D - Sump Overflow and Water Backup From Sewers, Septic or Drains

The following Additional Coverage applies when Special Covered Causes of Loss is specified in the Declarations for **Coverages A, B, C** and **D:**

a. We will pay for direct physical loss or damage to Covered Property covered under **Coverage A, B** or **C,** and for loss of use as covered under **Coverage D,** caused by or resulting from water which:

1. backs up through a sewer, septic or drain; or

Special Limits of Insurance apply in excess of any applicable Deductibles.

## G. FARM PROPERTY CONDITIONS

The following conditions apply in addition to the Common Policy Conditions.

### Loss Conditions

#### 1. Abandonment

There can be no abandonment of any property to us.

#### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that the selection be made by a judge of a court having jurisdiction.

The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. pay its chosen appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

#### 3. Duties In The Event Of Loss Or Damage

You must see that the following are done in the event of loss or damage to Covered Property:

a. Notify any law enforcement authority.

b. Give us prompt notice of the loss or damage. Include a description of the property involved.

c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f. As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

h. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

i. Cooperate with us in the investigation or settlement of the claim.

#### 4. Insurance Under Two Or More Coverages

If two or more of this policy's Coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## 5. Legal Action Against Us

No one may bring a legal action against us under this Coverage Form unless:

a. there has been full compliance with all of the terms of this Coverage Form; and

b. the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## 6. Loss Payment

a. In the event of loss or damage insured against under this Coverage Form, at our option we will either:

   (1) pay the value of lost or damaged property;

   (2) pay the cost of repairing or replacing the lost or damaged property;

   (3) take all or any part of the property at an agreed or appraised value; or

   (4) repair, rebuild or replace the property with other of like kind and quality.

b. We will not pay you more than your financial interest in the Covered Property.

c. We will give notice of our intentions within 30 days after we receive the proof of loss.

d. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all the terms of this Coverage Part, and

   (1) we have reached agreement with you on the amount of loss; or

   (2) an appraisal award has been made.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims

against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property. (

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

## 7. Pair, Sets or Parts

a. Pair or Set. In case of loss or damage to any part of a pair or set, we may:

   (1) repair or replace any part to restore the pair or set to its value before the loss; or

   (2) pay the difference between the value of the pair or set before and after the loss; or

b. Parts. In case of loss or damage to any part of Covered Property consisting of several parts when complete, we ( will only pay for the value of the lost or damaged part.

## 8. Other Insurance

a. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

b. If there is other insurance covering the same loss or damage, other than that described in 8.a. above, we will pay only the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable ( Limit of Insurance.

## 9. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## 10. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to loss.

b. After a loss, only if at the time of loss, that party is one of the following:

   (1) someone insured by this insurance;

   (2) a business firm;

      (a) owned or controlled by you; or

      (b) that owns or controls you; or

   (3) your tenant.

This will not restrict your insurance.

## 11. Unoccupancy And Vacancy

a. If a dwelling is "vacant" or "unoccupied" beyond a period of 120 consecutive days, the Limit of Insurance applicable to the dwelling and its contents will be automatically reduced by 50%, unless we extend the period of "vacancy" or "unoccupancy" by endorsement made a part of this Coverage Form.

b. In addition to the penalty described in a. above, "unoccupancy" or "vacancy" results in certain exclusions or limitations applicable to certain causes of loss. See **Section B. Covered Causes of Loss - Basic, Broad and Special.**

## GENERAL CONDITIONS

1. **Concealment Or Fraud.** The entire policy will be void if, whether before or after a loss, an "Insured" has:

   a. intentionally concealed or misrepresented any material fact or circumstance;

   b. engaged in fraudulent conduct; or

   c. made false statements

   relating to this insurance.

2. **Control of Property**

   Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

   The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

3. **Liberalization**

   If we adopt any revision that would broaden the coverage under this Coverage Form without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Form.

4. **Mortgage Holders**

   a. The term mortgage holder includes trustee.

   b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Form, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

   (1) pays any premium due under this Coverage Form at our request if you have failed to do so;

   (2) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

   (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

   All of the terms of this Coverage Form will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Form:

   (1) the mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

   (2) the mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

   At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

   (1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

   (2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

**5. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**6. Policy Period**

We cover loss or damage commencing during the policy period shown in the Declarations.

**H. DEFINITIONS**

The following words and phrases have a special meaning throughout the Coverage Forms making a part of this policy;

1. **"Business Property"** means property pertaining to any trade, profession or occupation other than farming.

2. **"Dwelling"** means a building used principally for family residential purposes, and includes mobile homes and modular and prefabricated homes or residential quarters within a farm structure, except when residential quarters are a part of the building.

   "Dwelling" does not mean a building used in such agricultural operations as storage of farm produce, "livestock" or "poultry."

3. **"Farm personal property"** means equipment, supplies and products of farming or ranching operations, including but not limited to feed, seed, fertilizer, "livestock," other animals, "poultry," grain, bees, fish, worms, produce and agricultural machinery, vehicles and equipment.

4. **"Insured"** means you, your spouse, and, if you are an individual, the following members of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of any person specified above.

5. **"Insured location"** means any location, including its private approaches, described in the Declarations pertaining to this Coverage Form.

6. **"Livestock"** means cattle, sheep, swine, goats, horses, mules and donkeys.

7. **"Money"** means currency, coins and bank notes in current use and having a face value; also travelers' checks, register checks and money orders held for sale to the public.

8. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

9. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

10. **"Poultry"** means fowl kept by you for use or sale.

11. **"Securities"** means negotiable and non-negotiable instruments or contracts presenting either "money" or other property and includes:

    a. tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

    b. evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    But "securities" does not include "money."

12. **"Unoccupancy"** or **"unoccupied"** means the condition of a "dwelling" (except while being constructed) not being lived in even if it contains furnishings or other property customary to its intended use or occupancy. A "dwelling" being remodeled does not mean being constructed.

13. **"Vacant"** or **"vacancy"** means the condition of a dwelling (except while being constructed) not containing sufficient furnishings or other property customary to its intended use or occupancy. A "dwelling" being remodeled does not mean being constructed.

14. **"Specified Causes of Loss:** means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage; as described in **B.1.** and **B.2.**



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 81 22**
(Ed. 04 96)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AGRIPAK FARM AND RANCH POLICY

### REPLACEMENT COST - TACK

This endorsement modifies insurance provided under the following:

FARM PROPERTY COVERAGE FORM

The **Valuation** Loss Condition under **SECTION A, COVERAGE E,** Paragraph **5.c.** is deleted and replaced by the following:

**c. Valuation**

In the event of loss or damage to tack, we will determine the value of covered property on the basis of replacement cost without deduction for depreciation, subject to the following:

(1) We will determine the value of the following kinds of property on the basis of actual cash value at the time of loss up to an amount no greater than the cost to repair or replace:

(a) antiques, fine arts, painting, and similar irreplaceable rare or antique articles;

(b) memorabilia, souvenirs, collectors' items and similar articles whose age or history contribute to their value;

(c) articles not maintained in good or workable condition; and

(d) articles that are outdated or obsolete and are stored or not used.

(2) The most we will pay in any one occurrence is the least of:

(a) the amount actually and necessarily spent to repair or replace the covered property; or

(b) the applicable Limit of Insurance shown for tack under **COVERAGE "E,"** the Declarations.

(3) If your loss qualified for payment on a replacement cost basis, but the cost of repair or replacement is more than $500. The only basis on which we will settle pending completion of repairs or replacement is actual cash value, as of time of loss.

In case of such a loss, you can make an initial claim for payment on the actual cash value basis, and later make a supplementary claim for replacement cost payment. If you elect to exercise this option, you must notify us of your intention in writing within 180 days of the occurrence of the loss.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AP 72 49**
(Ed. 05 93)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AGRIPAK FARM AND RANCH POLICY

## REPLACEMENT COST - HOUSEHOLD PERSONAL PROPERTY

This endorsement modifies insurance provided under the following:

FARM PROPERTY COVERAGE FORM

The **Valuation** Loss Condition under Section A, Coverage C, paragraph 4. is deleted and replaced by the following:

**Valuation**

In the event of loss or damage under Coverage C, we will determine the value of Covered Property on the basis of replacement cost without deduction for depreciation, subject to the following:

a. We will determine the value of the following kinds of property on the basis of actual cash value at the time of loss up to an amount no greater than the cost to repair or replace:

(1) antiques, fine arts, paintings, and similar irreplaceable rare or antique articles;

(2) memorabilia, souvenirs, collectors' items and similar articles whose age or history contribute to their value;

(3) articles not maintained in good or workable condition; and

(4) articles that are outdated or obsolete and are stored or not used.

b. The most we will pay in any one occurrence is the least of:

(1) the amount actually and necessarily spent to repair or replace the Covered Property;

(2) the applicable special Limit of Insurance shown under Section A, Coverage C, paragraph 3.

(3) the applicable Limit of Insurance shown in the Declarations for Coverage C.

c. If your loss qualified for payment on a replacement cost basis, but the cost of repair or replacement is more than $500, the only basis on which we will settle pending completion of repairs or replacement is actual cash value, as of time of loss.

In case of such a loss, you can make an initial claim for payment on the actual cash value basis, and later make a supplementary claim for replacement cost payment. If you elect to exercise this option, you must notify us of your intention in writing within 180 days of the occurrence of the loss.

**GREAT**AMERICAN.
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AL 74 01** (Ed. 07 96)

**Policy No.** APK 1-97-44-39 - 03

## AGRIPAK FARM AND RANCH POLICY

### FARM GENERAL LIABILITY COVERAGE FORM
### DECLARATIONS PAGE

| | |
|---|---|
| **NAMED INSURED:** SCOT & KATHY POTTER DANLON FARMS | **POLICY PERIOD:** 04/04/03 to 04/04/04 |

**FORM OF BUSINESS:** ( X ) Individual    (   ) Joint Venture    (   ) Partnership
( ) Organization (Other than Partnership or Joint Venture)

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| General Aggregate Limit (Other than Products and Completed Operations | $ 2,000,000. | |
| Products and Completed Operations Aggregate Limit | $ 2,000,000. | |
| Each Occurrence Limit | $ 1,000,000. | |
| Personal and Advertising Injury Limit | $ 1,000,000. | |
| Fire Damage Limit | $    100,000. | any one fire |
| Medical Expense Limit | $     10,000. | any one person |
| Chemical Drift Aggregate Limit | $     25,000. | |
| Transportation of Farm Chemicals or Fertilizer Aggregate Limit | $     25,000. | |
| Damage to Property of Others Limit | $ 500 | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

**PREMIUM:**                              **Total Advance Premium $**

Premium shown is payable:    $              at inception:
$ SEE FORM IL7023

  **RMS AND ENDORSEMENTS** applicable to this Coverage Part and made a part of this
policy at the time of issue are listed on the attached Forms and Endorsements
Schedule, AL 88 01 (05/90).

Case 4:09-cv-00017-HSM-SKL Document 1 Filed 02/17/09 Page 66 of 118 PageID #: 66

38

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000
GREAT**AMERICAN.**
INSURANCE GROUP

AL 88 01 (Ed. 05 90)

## AGRIPAK FARM AND RANCH POLICY

## FARM GENERAL LIABILITY FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are
attached to and are a part of this policy:

Date Added*
or
Form and Edition  ST Date Deleted    Form Description

1.  AL7401    07/96  TN    FARM GL COV FORM DEC PAGE

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000
GREAT**AMERICAN.**
INSURANCE GROUP

AL 74 02 (Ed. 05 90

## AGRIPAK FARM AND RANCH POLICY

## FARM GENERAL LIABILITY COVERAGE DECLARATIONS
SUPPLEMENT SCHEDULE

| Classification | Class Code | Premium Basis | Rates | | Advanced Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| FARM PREMISES 51-150 ACRES | 01806 | (U) 1 | INCL | 95.00 | INCL | 95. |
| PERS LIABILITY | 05135 | (U) 1 | | 19.00 | | 19. |
| FARM EMPLOYERS LIABILITY (FT) SEE FORM AL7406 | 88130 | (U) 1 | | 74.00 | | 74. |
| FARM EMPLOYERS LIABILITY (PT) SEE FORM AL7406 | 88131 | (U) 1 | | 26.00 | | 26. |
| STABLES-TRAINING/ BREEDING/RACING | 99111 | (P)$40,000. | INCL | 14.18 | INCL | 567. |
| .DD'L INSURED SEE FORM AL7414 | 04122 | (U) 1 | INCL | 168.00 | INCL | 168. |
| FARM RECREATIONAL VEHICLES SEE FORM AL7405 | 07990 | (U) 4 | INCL | 109.75 | INCL | 439. |



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GREAT AMERICAN.
INSURANCE GROUP

AL 74 03
(Ed. 10 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AGRIPAK FARM AND RANCH POLICY

## FARM GENERAL LIABILITY COVERAGE FORM

### SECTION I - COVERAGES

**COVERAGE H. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the "Insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments - COVERAGES H. and I.** This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period. The "bodily injury" and "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages. However, we have no duty to defend any "Insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. But:

    (1) the amount we will pay for damages is limited as described in **Section III - Limits Of Insurance;**

    (2) we may investigate and settle any claim or "suit" at our discretion; and

    (3) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under **COVERAGES H. or I.** or medical expenses

b. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

c. "Property damage" that is loss of use of tangible property that is not physically injured shall be deemed to occur at the time of the "occurrence" that caused it.

**2. Exclusions**

This insurance does not apply to :

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the "Insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    (1) assumed in a contract or agreement that is an "insured contract"; or

    (2) that the "Insured" would have in the

LL1

(ii) if the operations are to test for, monitor, clean up, re-move, contain, treat, detoxi-fy or neutralize the pollu-tants.

(e) Subparagraphs (a) and (d)(i) of Item (1) do not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire. As used here a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost, or expense arising out of any governmental direction or re-quest that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gas-eous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycl-ed, reconditioned or reclaimed. Waste does not include natural fertilizers of plant or animal origin while used in normal or usual "farming" operations provided the operations are not in violation of any ordinance or law.

g. Aircraft, "Auto," or Watercraft

"Bodily injury" or "property damage" aris-ing out of the ownership, maintenance, use of entrustment to others of any air-craft, "auto" or watercraft owned or op-erated by or rented or loaned to any "In-sured." Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) a watercraft while ashore on premises you own or rent;

(2) a watercraft you do not own that is:

(a) less than 26 feet long; and

(b) not being used to carry per-sons or property for a charge;

(3) parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the "Insured";

(4) liability assumed under any "in-sured contract" for the owner-ship, maintenance or use of air-craft or watercraft; or

(5) "bodily injury" or "property dam-age" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment" (Section VI.12).

h. Mobile Equipment

"Bodily injury" or "property damage" aris-ing out of:

(1) the transportation of "mobile equip-ment" by an "auto" owned or operated by or rented or loaned to any "In-sured"; or

(2) the use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, strength, speed or demolition contest or in any stunting activity.

(3) of the operation of any of the equip-ment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment" (SECTION VI);

(4) that take place on the "insured loca-tion"; or

(5) sustained by a "residence employee" in the course of employment by an "In-sured."

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War in-cludes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

## p. Asbestos

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of or related in any way to asbestos or asbestos – containing materials.

We shall not have the duty to defend any such claim or "suit."

## q. Abuse or Molestation

"Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

(a) the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any Insured, or

(b) the negligent

(i) employment;

(ii) investigation;

(iii) supervision;

(iv) reporting to the proper authorities, or failure to so report; or

(v) retention;

of a person for whom any "Insured" is or ever was legally responsible and whose conduct would be excluded by (a) above.

## r. Employment Related Practices

"Bodily injury" or "personal injury" arising out of any:

(1) refusal to employ;

(2) termination of employment;

(3) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

(4) consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

## s. Nuclear

(1) "Bodily injury" or "property damage":

(a) With respect to which an "Insured" under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limit of Insurance; or

(b) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) Expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

(3) "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

(a) the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or (b) has been discharged or dispersed therefrom;

(b) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "Insured"; or

(c) the "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

(4) As used in this exclusion:

**"Hazardous properties"** include radioactive, toxic or explosive properties;

**"Nuclear material"** means "source material," "Special nuclear material" or "by-product material";

**"Source material," "special nuclear material,"** and **"by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**"Waste"** means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or or-

ganization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

**"Nuclear facility"** means:

(a) any "nuclear reactor";

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel, or (3) handling, processing or packaging "waste";

(c) any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

## t. Seed

"Property damage" arising out of:

(1) failure of seed to germinate;

(2) erroneous delivery of seed; or

(3) error in mechanical mixture of seed.

(4) cross pollination after seed has germinated; or

(5) the presence of:

    (a) disease organisms;

    (b) noxious weeds; or

    (c) varietal variations.

## u. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of, or failure to render any professional services except for those professional services specifically listed and rated for on the Farm General Liability Coverage Declarations Supplement Schedule.

## v. "Bodily injury" or "property damage" to an Insured.

"Bodily injury" or "property damage" to you or in any "Insured" within the meaning of "Insured" as defined in Paragraph 10. in SECTION VI - DEFINITIONS.

## w. Controlled Substances

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 or 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

## x. Migrant and Seasonal Agricultural Worker Protection Act

"Bodily injury" or "property damage" awarded under:

(1) the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801 et seq.) (hereinafter "MSAWPA");

(2) any law, due to violation of the MSAWPA; or

(3) any regulation promulgated pursuant to the MSAWPA.

## y. Lead

This insurance does not apply to:

Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts or consultants arising out of or related in any way, either directly or indirectly to:

1. lead, lead products, lead containing materials or products, lead dust, including, but not limited to, manufacture, mining, use, sale, installation, removal or distribution activities;

2. exposure to, testing for, monitoring of, cleaning up, removing, containing or treating of lead, lead products, lead containing materials or products or lead dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of or related in any way, either directly or indirectly, to lead, lead products, lead containing materials or products, or lead dust.

Exclusion c. through y. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance Fire Damage applies to this coverage as described in SECTION III - LIMITS OF INSURANCE.

## COVERAGE I. PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the "Insured" becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary payments - Coverages H. and I.** We will have the right and duty to defend any "suit" seeking those damages. However, we have no duty to defend any "Insured" against a "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. But:

   (1) the amount we will pay for damages is limited as described in **Section III - Limits Of Insurance;**

   (2) we may investigate and settle any claim or "suit" at our discretion; and

   (3) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under **COVERAGES H.** or **I.** or medical expenses under **COVERAGE J.**

b. This insurance applies to "personal injury" only if caused by an offense:

   (1) committed in the "coverage territory" during the policy period; and

   (2) arising out of the conduct of your "business," excluding advertising, publishing, broadcasting or telecasting done by or for you.

c. This insurance applies to "advertising injury" only if caused by an offense committed:

   (1) in the "coverage territory" during the policy period; and

   (2) in the course of advertising your goods, products or services.

### 2. Exclusions

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

   (1) arising out of oral or written publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

   (2) arising out of oral or written publication or material whose first publication took place before the beginning of the policy period;

   (3) arising out of the willful violation of a penal statue or ordinance committed by or with the consent of the "Insured"; or

   (4) for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

   (5) Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

      (a) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

         i. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Insured";

            This exclusion does not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a fire, if the fire:

            1. is set by the "Insured" on the "insured location"; and

2. is set for the purpose of burning off crop stubble or other vegetation and is consistent with normal and "farming" agricultural practice; and

3. is not set in violation of an ordinance or law.

ii. at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

iii. which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

iv. at or from any premises, site or location, on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

1. if the pollutants are brought on or to the premises, site or location in connection with such operations by such "Insured," contractor or subcontractor; or

2. if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of pollutants.

Subparagraphs (i) and (iv) 1. do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(b) Any request, demand or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

(c) Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed. Waste does not include natural fertilizers of plant or animal origin while used in normal or usual "farming" operations provided the operations are not in violation of any ordinance or law.

b. "Advertising injury" arising out of:

(1) breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) the failure of goods, products or services to conform with advertised quality or performance;

(3) the wrong description of the price of goods, products or services; or

(4) an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE J. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay reasonable medical expenses incurred or medically ascertained within 3 years from the date of an accident causing "bodily injury."

We will make these payments regardless of fault.

Reasonable medical expenses means expenses incurred or ascertained for:

(1) first aid administered at the time of an accident;

(2) necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) necessary ambulance, hospital, professional nursing and funeral services.

b. This coverage applies only:

(1) to a person (other than an "Insured") who is on the "insured location," with the permission of an "Insured," or

(2) to a person (other than an "Insured") off the "insured location," provided the "bodily injury":

(a) arises out of condition on the "insured location" or the ways immediately adjoining it;

(b) is caused by the activities of an "Insured" in the course of employment by an "Insured";

(c) is caused or sustained by a "residence employee" in the course of employment by an "Insured"; or

(d) is caused by an animal owned by or in the care of an "Insured."

### 2. Exclusions

We will not pay expenses for "bodily injury" to:

a. (1) any person injured while on the "insured location" by reason of professional services being rendered there; or

(2) to any "Insured."

The only exceptions to a.(1) is in "occurrences" of "bodily injury" to a "residence employee."

b. Any person injured due to an act or omission in connection with any location (other than an "insured location") that is owned, rented or controlled by the "Insured."

The only exceptions to this exclusion are in "occurrences" of "bodily injury" sustained by a "residence employee" arising out of and in the course of employment by the "Insured."

c. Any "farm employee" or other person engaged in work usual or incidental to the maintenance or use of the "insured location."

The only exceptions to this exclusion are in "occurrences" of "bodily injury" sustained by a "residence employee" or by a person on the "insured location" in a neighborly exchange of assistance for which the "Insured" is not obligated to pay any money.

d. Any person eligible to receive any benefits that an "Insured" voluntarily provides or is required to provide under any workers compensation, non-occupational disability or occupational disease law;

e. Any person regularly residing on any part of the "insured location" or who is a resident member of your household.

The only exceptions to this exclusion are in "occurrences" of "bodily injury" to a "residence employee."

f. Any person, if the "bodily injury" is excluded under **COVERAGE H.;**

g. Any person injured due to war, whether or not declared, or due to any act or condition incident to war. War includes civil war, insurrection, rebellion and revolution; or

h. Any person awarded damages under:

(1) the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801 et seq.) (hereinafter "MSAWPA");

(2) any law, due to violation of the MSAWPA; or

(3) any regulation promulgated pursuant to the MSAWPA.

## COVERAGE K. CHEMICAL DRIFT LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the "Insured" becomes legally obligated to pay as damages for physical injury to crops or animals if:

(1) the injury was caused by discharge, dispersal, release or escape into the air, from the "insured location," of the chemicals, liquids or gases that the "Insured" has used in normal and usual agricultural operations; and

(2) the chemicals, liquids or gases entered into the air by some means other than discharge, dispersal, release or escape from aircraft.

The term physical injury does not include any indirect or consequential damages such as loss, at any time, of market for crops or animals or of use of soil or animals.

This coverage applies only to physical injury that occurs during the policy period. The physical injury must be caused by an "occurrence."

b. We will have the right and duty to defend any "suit" seeking damages for covered physical injury. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) the amount we will pay for damages is limited as described below in **3., Aggregate Limit of Insurance;** and

(2) our right and duty to defend end when we have used up the applicable Aggregate Limit of Insurance in the payment of judgments or settlements under **Chemical Drift Liability.**

c. As used in **COVERAGE K.** the term "suit" means a civil proceeding in which damages because of physical injury to which this insurance applies are alleged.

"Suit" includes:

(1) an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

(2) any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

d. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Item 1. Supplementary Payments of the **Additional Coverages** in the Farm General Liability Coverage Form.

### 2. Exclusions

**Chemical Drift Liability** does not apply to:

a. Any loss, cost or expense arising out of any:

(1) request, demand or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants; or

(2) claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring,

cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, chemicals, liquids or gases.

**b.** Physical injury to crops or animals arising out of agricultural operations which are in violation of an ordinance or law;

**c.** Physical injury to crops or animals expected or intended from the standpoint of the "Insured";

**d.** Physical injury to crops or animals for which the "Insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** assumed in a contract or agreement that is an "insured contract," provided the physical injury occurs subsequent to the execution of the contract or agreement; or

    **(2)** that the "Insured" would have in the absence of the contract or agreement.

With respect to **Chemical Drift Liability,** Paragraph **g.** of the "insured contract" definition in this policy is deleted and replaced by the following: That part of a contract or agreement pertaining to your "farming" operations (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay a third person or organization for physical injury to crops or animals. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**e.** Physical injury to crops or animals you own, rent or borrow.

**3. Aggregate Limit Of Insurance for Chemical Drift Liability:**

**a.** Our total liability for **COVERAGE K.** Chemical Drift Liability is the Aggregate Limit of Insurance stated, in the Declarations.

**b.** The stated Aggregated Limit of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Aggregate Limit of Insurance.

**c.** Therefore, the stated Aggregate Limit of Insurance is the most we will pay for the applicable period of time as described in **b.** above, regardless of the number of:

    **a.** "occurrences";

    **b.** "Insureds";

    **c.** claims made or "suits" brought; or

    **d.** persons or organizations making claims or bringing "suits."

## COVERAGE L - CUSTOM FARMING

**1. Insuring Agreement**

**a.** We will pay those sums that the "Insured" becomes legally obligated to pay as damages arising out of the "Insured's" performance of or failure to perform custom "farming" operations for others for a charge under contract or agreement.

But this Additional Coverage will apply only if your receipts during the 12 months preceding this policy's inception date from such custom "farming" operations do not exceed $10,000.

**b.** All exclusions under **COVERAGE H** apply except **2.l** and **2.m.** with respect to custom "farming."

## COVERAGE M - TRANSPORTATION OF FARM CHEMICALS OR FERTILIZER LIABILITY COVERAGE

**1. Insuring Agreement**

**a.** We will pay those sums that the "Insured" becomes legally obligated to pay as damages caused by or resulting from discharge, dispersal, seepage, migration, release or escape of farm chemicals or fertilizers while being transported by the "Insured" with an "auto" or "mobile equipment."

### 2. Exclusions

Coverage M does not apply to:

**a.** Any loss, cost or expense arising out of:

1. application of farm chemicals or fertilizers during normal and usual "farming" activities;

2. application or transportation of farm chemicals or fertilizers in violation of any ordinance or law; or

3. assumption of liability in a contract or agreement

### 3. Aggregate Limit of Insurance for COVERAGE M

**a.** The Aggregate Limit of Insurance for **COVERAGE M** is $25,000, unless a higher Aggregate Limit of Insurance is shown in the Declarations which is the most we will pay for damages and all costs to defend the "Insured" against any "suits" or claims made.

**b.** The Aggregate Limit of Insurance applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Aggregate Limit of Insurance.

**c.** Therefore, the stated $25,000 Aggregate Limit of Insurance is the most we will pay for the applicable period of time as described in **b.** above, regardless of the numbers of:

**a.** "occurrences";

**b.** "Insureds";

**c.** claims made or "suits" brought; or

**d.** persons or organizations making claims or bringing "suits."

### SUPPLEMENTARY PAYMENTS - COVERAGES H. AND I.

We will pay, with respect to any claim we investigate or settle or any "suit" against an "Insured" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the "Insured" at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the "Insured" in the "suit."

6. Pre-judgment interest awarded against the "Insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

## SECTION II - WHO IS AN "INSURED"

1. If you are designated in the Declarations as:

   a. An individual, you are an "Insured"; and, if they are members of your household, your spouse, and your and your spouse's relatives who are under the age of 21 are also "Insureds."

   b. A partnership or joint venture, you are an "Insured." Your members, your partners, and their spouses are also "Insureds," but only with respect to the conduct of your "farming" operations and other "business" operations designated in the Declarations.

   c. A limited liability company, you are, an "Insured." Your members are also "Insureds," but only with respect to the conduct of your business. Your managers are "Insureds," but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an "Insured." Your "executive officers" and directors are "Insureds," but only with respect to their duties as your officers or directors. Your stockholders are also "Insureds," but only with respect to their liability as stockholders.

2. Each of the following is also an "Insured":

   a. Your employees, but only for acts within the scope of their employment by you. However, none of these employees is an "Insured" for:

      (1) "bodily injury" or "personal injury" to you, your partners or members (if you are a partnership, joint venture or limited liability company) or to a co-employee (if you are a limited liability company), while in the course of his or her employment; or

      (2) "bodily injury" or "personal injury" arising out of his or her providing or failing to provide professional health care services; or

   (3) "property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, any of your partners or members (if you are a partnership, joint venture or limited liability company).

   b. Any person (other than your employee), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) with respect to liability arising out of the maintenance or use of that property; and

      (2) until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Form.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an "Insured" while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an "Insured," but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an "Insured" with respect to:

   a. "bodily injury" to a co-employee of the person driving the equipment; or

   b. "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an "Insured" under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you

maintain ownership or majority interest, will be deemed to be an "Insured" if there is no other similar insurance available to that or‐ganization. However:

a. coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. **COVERAGE H.** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the or‐ganization; and

c. **COVERAGE I.** does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you ac‐quired or formed the organization.

No person or organization is an Insured with re‐spect to the conduct of any current or past part‐nership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declara‐tions and the rules below fix the most we will pay regardless of the number of:

   a. "Insureds";

   b. claims made or "suits" brought; or

   c. persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. medical expenses under **COVERAGE J.**; and

   b. damages under **COVERAGE H.** and **COV‐ERAGE I.**, except damages because of in‐jury and damage included in the "pro‐ducts–completed operations hazard."

3. The Products–Completed Operations Aggre‐gate Limit is the most we will pay under **COV‐ERAGE H.** for damages because of injury and damage included in the "products–completed operations hazard."

4. Subject to **2.** above, the Personal and Ad‐vertising Injury Limit is the most we will pay under **COVERAGE I.** for the sum of all dam‐ages because of all "personal injury" and all "advertising injury" sustained by any one per‐son or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. damages under **COVERAGE H.**; and

   b. medical expenses under **COVERAGE J.**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to **5.** above, the Fire Damage Limit is the most we will pay under **COVERAGE H.** for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the own‐er, arising out of any one fire.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COV‐ERAGE J.** or all medical expenses because of "bodily injury" sustained by any one person.

8. The Chemical Drift Liability Aggregate Limit is the most we will pay under Coverage K. for damages because of physical injury to crops or animals.

The limits of this Coverage Form apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is ex‐tended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - FARM GENERAL LIABILITY COVERAGE CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the "Insured" or of the "Insured's" estate will not relieve us of our obligations under this Coverage Form.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) how, when and where the "occurrence" or offense took place;

(2) the names and addresses of any injured persons and witnesses; and

(3) the nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any "Insured," you must

(1) immediately record the specifics of the claim or "suit" and the date received; and

(2) notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other "Insured" involved must

(1) notify the police if a law may have been broken;

(2) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(3) authorize us to obtain records and other information;

(4) cooperate with us in the investigation, or settlement of the claim, or defense against the "suit"; and

(5) if requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

(6) at our request, assist us in the enforcement of any right against any person or organization that may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

d. No "Insured" will, except at that "Insured's" own cost, voluntarily make any payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e. Any injured person who makes a claim for payment of medical expenses under the provisions of **COVERAGE J.** must

(1) give us written proof of claim, under oath if required, as soon as practicable;

(2) execute authorization to allow us to obtain copies of medical reports and records; and

(3) submit to physical examination by a physician selected by us when and as ofter as we reasonably require.

Requirements (1) and (2) above may be carried out by a person acting on behalf of the injured person.

### 3. Insurance Under Two Or More Coverages

If two or more of this form's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### 4. Legal Action Against Us

No person or organization has a right under this Coverage Form:

a. to join us as a party or otherwise bring us into a "suit" asking for damages from an "Insured"; or

b. to sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to re-cover on an agreed settlement or on a final judgment against an "Insured" obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the "Insured" and the claimant or the claimant's legal representative.

5. **No Admission Of Liability With Medical Payments**

No payment we make under the provision of **COVERAGE J.** constitutes an admission of li-ability by an "Insured" or us.

6. **Other Insurance**

This condition applies only if, in addition to the insurance provided under this Coverage Form, the "Insured" has other insurance under this or any other policy covering the same obligations to pay damages and provide defense against "suits" for damages.

a. In covered "occurrences" arising from any cause except the ownership, maintenance, operation, entrustment to others, use, or "loading or unloading" of a "motor vehicle" or watercraft, we will pay only the pro-portion of covered damages and related defense costs that the applicable Limit of Insurance under this Coverage Form bears to the total amount of all insurance the "Insured" had providing the same coverage.

b. In covered "occurrences" arising from the ownership, maintenance, operation, en-trustment to others, use, or "loading or unloading" of a "motor vehicle" or water-craft, this insurance will not apply to the extent that any collectible insurance, whether primary, excess or contingent, is available to the "Insured."

7. **Transfer Of Rights Of Recovery Against Others To Us**

If the "Insured" has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The "Insured" must do nothing after loss to impair them. At our request, the "Insured" will bring "suit" or transfer those rights to us and help us enforce them.

**Premium Audit.**

a. We will compute all premiums for this Coverage Form in accordance with our rules and rates.

b. Premium shown in this Coverage Form as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and pay-able on notice to the first Named Insured. If the sum of the advance and audit pre-miums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## SECTION V - ADDITIONAL CONDITIONS

1. **Liberalization**

If we adopt any revision that would broaden the coverage under this Coverage Form with-out additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Cov-erage Form.

2. **Representations**

By accepting this policy, you agree:

a. the statements in the Declarations are ac-curate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

3. Separation Of "Insureds"

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Form to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each "Insured" against whom claim is made or "suit" is brought.

## SECTION VI - DEFINITIONS

1. "Advertising injury" means injury arising solely out of your advertising activities as a result of one or more of the following offenses during the policy period:

a. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. oral, written, televised, videotaped or electronic publication of material that violates a person's right of privacy;

c. misappropriation of advertising ideas or style of doing business; or

d. infringement of copyright, title or slogan;

e. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items 1.a. through 1.d.

2. "Auto" means a land motor vehicle, trailer or semitrailer, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means physical injury, sickness, or disease, including death of a person. "Bodily Injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person. ("Bodily Injury" will not include mental injury, mental anguish, humiliation, or shock, or any physical injury, sickness, disease or death resulting therefrom, actually or allegedly incurred by persons who witness, but do not incur physical injury.)

4. "Business" means a trade, profession, occupation, enterprise or activity, including "farming," which is engaged in for the purpose of monetary or other compensation.

5. "Coverage territory" means:

a. the United States of America (including its territories and possessions). Puerto Rico and Canada;

b. international waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. all parts of the world if:

(1) the injury or damage arises out of:

(a) goods or products made or sold by you in the territory described in a. above; or

(b) the activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) the "Insured's" responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

6. "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar government document.

**7. "Farm employee"** means any "Insured's" employee whose duties are principally in connection with the maintenance or use of the "insured location" as a farm. These duties include the maintenance or use of the "Insured's" farm equipment.

But "farm employee" does not mean any employee while engaged in an "Insured's" "business."

**8. "Farming"** means the science or art of cultivating the soil, producing crops, or raising animals.

**9. "Impaired property"** means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. the repair, replacement, adjustment or removal of "your product" or "your work"; or

b. your fulfilling the terms of the contract or agreement.

**10. "Insured"** means, refer to Section II – **Who is an Insured.**

**11. "Insured contract"** means:

a. a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. a sidetrack agreement;

c. an easement or license agreement in connection with vehicle or pedestrian private railroad crossing at grade;

d. any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

e. an indemnification of a municipality as required by ordinance, except in connection with work for a municipality; or

f. an elevator maintenance agreement; or

g. that part of any other contract or agreement pertaining to your "farming" operations or other business designated in the Declarations (including an indemnification of a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **g.** does not include that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

**12. "Insured location"** means:

a. the premises (including grounds and private approaches) and the ways immediately adjoining it shown in the Declarations;

b. the part of other premises, or of other structures and grounds, that is used by you as a residence and shown in the Declarations, or acquired by you during the policy period for your use as a residence;

c. premises used by you in conjunction with the premises included in a. or b. above;

d. any part of premises not owned by any "Insured" but where an "Insured" is temporarily residing;

e. vacant land owned by or rented to an "Insured";

f. land owned by or rented to any "Insured" on which a farm structure or farm family dwelling is being constructed as a residence for an "Insured";

g. individual or family cemetery plots or burial vaults of an "Insured";

h. any part of premises occasionally rented to any "Insured" for other than "business" purposes; and

i. any premises (including its grounds and private approaches) that you or your spouse acquire during the term of this policy.

13. **"Loading or unloading"** means the handling of property:

a. after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "motor vehicle";

b. while it is in or on an aircraft,, watercraft or "motor vehicle" or

c. while it is being moved from an aircraft, watercraft or "motor vehicle" to the place where it is finally delivered.

But "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "motor vehicle."

14. **"Mobile equipment"** means the following, including and attached machinery or equipment:

a. bulldozers, forklifts and tractors designed for use principally off public roads;

Other farm machinery designed for use:

(1) principally off public roads; and

(2) as implements for cultivating or harvesting;

b. vehicles while used on premises you own or rent;

c. vehicles that travel on crawler treads, except that snowmobiles are "mobile equipment" only while on an "insured location" or any premises you own or rent;

d. vehicles, whether self-propelled or not, on which are permanently mounted:

(1) power cranes, shovels, loaders, diggers or drills; or

(2) road construction or resurfacing equipment such as graders, scrapers or rollers;

e. vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) cherry pickers and similar devices used to raise or lower workers;

f. vehicles not described in **a., b., c.** or **d.** above that are maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "motor vehicles":

(1) equipment designed primarily for:

(a) road maintenance, but not construction or resurfacing; or

(b) street cleaning;

(2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

15. **"Motor vehicle"** means:

a. a motorized land vehicle, trailer or semi-trailer:

(1) designed for travel on public roads; or

(2) used on public roads;

unless it qualifies as "mobile equipment";

b. any machinery or equipment attached to a vehicle, trailer or semi-trailer included in (1) above;

c. any vehicle, including any attached machinery or equipment, while being towed by or carried on a vehicle included in **12.f.(1), (2)** or **(3)** above.

But "motor vehicle" does not mean:

d. "mobile equipment";

e. a motorized land vehicle in dead storage on an "insured location"; or

f. a boat, camp trailer, home trailer or utility trailer unless it is being towed by or carried on a motorized land vehicle included in **a.** above.

16. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17. **"Personal injury"** means injury, other than "Bodily Injury" or "Advertising Injury" arising out of one or more of the following offenses during the policy period:

a. false arrest, detention or imprisonment;

b. malicious prosecution;

c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. oral, written, televised, videotaped or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy.

f. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **16.a.** through **e.**

18. a. **"Products-completed operations hazard"** includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) products that are still in your physical possession; or

(2) work that has not yet been completed or abandoned.

b. **"Your work"** will be deemed completed at the earliest of the following times:

(1) when all of the work called for in your contract has been completed.

(2) when all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

When that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) the transportation of property, unless the "bodily injury" or "property damage" arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) the existence of tools, uninstalled equipment or abandoned or unused materials;

(3) products or operations for which the classification in this Coverage Form or in our manual of rules includes products or completed operations.

19. **"Property damage"** means:

a. physical injury to tangible property, including all resulting loss of use of that property; or

b. loss of use of tangible property that is not physically injured.

20. **"Residence employee"** means an "Insured's" employee whose duties are principally in connection with the maintenance or use of the "residence premises," including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the "business" of any "Insured."

21. **"Suit"** means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** an arbitration proceeding in which such damages are claimed and to which the "Insured" must submit or does submit with our consent; or

   **b.** any other alternative dispute resolution proceeding in which such damages are claimed and to which the "Insured" submits without consent.

22. **"Your product"** means:

   **a.** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) you;

      (2) others trading under your name; or

      (3) a person or organization whose "business" or assets you have acquired; and

   **b.** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" does not include property rented to or located for the use of others but not sold.

   "Your product" includes:

   (1) warranties or representations made at any time with respect to the fitness, quality, durability or performance or use of "your product"; and

   "Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the times included in **a.** or **b.** above.

23. **"Your work"** means:

   **a.** work or operations performed by you or on your behalf; and

   **b.** materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in **a.** or **b.** above.



**Administrative Offices**
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AL 74 04**
(Ed. 01 98)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AGRIPAK FARM AND RANCH POLICY

## PERSONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

FARM GENERAL LIABILITY COVERAGE FORM

**A. COVERAGE H. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is extended to apply to liability arising out of the "Insured's" personal or non-"business" activities.

With respect to coverage provided under this endorsement, **SECTION I, Coverage H,** Paragraph **2. Exclusions,** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" arising out of:

(1) any "Insured's" "business" pursuits;

(2) the rental or holding for rental by an "Insured" of any part of premises that are not residences; or

(3) the rental or holding for rental of any residence owned by an "Insured."

The only exceptions to this exclusion are in cases of occupancy or intended occupancy:

(a) by persons using the residence exclusively as living quarters on an occasional basis;

(b) of a part of the residence as living quarters by no more than 2 roomers or boarders; or

(c) of a part of the residence as an office, school, studio, or private garage.

(4) the rendering of, or failure to render, professional services; or

(5) any premises that is not an "insured location," but is owned, rented or controlled by an Insured.

The only exceptions to this exclusion are in "occurrences" of "bodily injury" to a "residence employee" arising out of and in the course of his or her employment by the Insured.

**c. Pollution**

(1) "Bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "Insured";

AL 74 04 (Ed. 01/98) XS                    (Page 1 of 9)

(b) at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

(c) which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

(d) at or from any premises, site or location on which any "Insured" or any contractors or subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

   (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such "Insured," contractor or subcontractor; or

   (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Waste does not include natural fertilizers of plant or animal origin while used in normal or usual "farming" operations provided the operations are not in violation of any ordinance or law.

d. **Loss Assessment**

"Bodily injury" or "property damage" for which an "Insured" is obligated to pay:

   (1) his or her share of any loss assessment charged against all members of an association, corporation or community of property owners; or

   (2) damages under any contract or agreement.

   This exclusion does not apply to written contracts:

   (a) that directly relate to the ownership, maintenance or use of an "insured location": or

   (b) under which the liability of others is assumed by the "Insured" prior to an "occurrence";

   provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract.

e. **Workers' Compensation or Similar Law**

Any obligation of the "Insured" under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

f. **Employers' Liability**

"Bodily injury" to the spouse, child, parent, brother or sister of a "residence employee" as a consequence of "bodily injury" to that "residence employee";

### g. Employment Related Practices

"Bodily injury" arising out of any:

(1) refusal to employ;

(2) termination of employment;

(3) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

### h. Motor Vehicle

"Bodily injury" (except when sustained by a "residence employee" in the course of and as a result of his or her employment by the "Insured") or "property damage" that arises out of:

(1) the ownership, maintenance, use, "loading or unloading" of "motor vehicles" or any other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "Insured";

(2) the entrustment by an "Insured" of a "motor vehicle" or any other motorized land conveyance to any person; or

(3) statutorily imposed vicarious parental liability for the actions of a child or minor using a means of transportation named in Paragraph (1) or (2) above.

The only exceptions to this exclusion are in "occurrences" involving:

(a) Trailers. But this exception requires that the trailer must not be towed by or carried on a motorized land conveyance.

(b) Motorized land conveyances designed for recreational use off public roads and not subject to motor vehicle registration. If the "Insured" owns the conveyance, this exception requires that the "occurrence" must take place on an "insured location."

(c) A motorized golf cart when used to play golf on a golf course.

(d) A motorized land conveyance not subject to motor vehicle registration and:

(i) used to service an "Insured's" residence;

(ii) kept in dead storage at the "insured location"; or

(iii) used exclusively as a device for assisting the handicapped.

### i. Watercraft

"Bodily injury" (except when sustained by a "residence employee" in the course of and as a result of his or her employment by the Insured) or "property damage" that arises out of:

(1) the ownership, maintenance, operation, entrustment to others, use or "loading or unloading" of any watercraft described in the list below; or

(2) statutorily imposed vicarious parental liability for the actions of a child or minor using any watercraft described in the list below.

Watercraft:

(a) with inboard or inboard-outdrive motor power owned by an "Insured";

(b) with inboard or inboard-outdrive motor power rented to an "Insured";

(c) that is a sailing vessel with or without auxiliary power, 26 feet or more in length, owned by or rented to an "Insured"; or

(d) powered by one or more outboard motors totaling over 50 horsepower, any of which is owned by an "Insured," if acquired before the beginning of the policy period, and about which:

(i) nothing is shown in the Declarations; or

(ii) you have failed to inform us in writing within 45 days of acquisition.

The only exceptions to this exclusion are in "occurrences" of "bodily injury" or "property damage" that:

(1) take place on the "insured location"; or

(2) involve watercraft being stored.

j. **Aircraft**

"Bodily injury" or "property damage" arising out of:

(1) The ownership, maintenance, use, "loading or unloading" of an aircraft;

The only exceptions to this exclusion are in "occurrences" of "bodily injury" sustained by a "residence employee." But this exception requires that the "residence employee" must:

(a) sustain the "bodily injury" in the course of and as a result of his or her employment by the "Insured"; and

(b) not be operating or performing maintenance work on the aircraft at the time of the "occurrence."

As used in this endorsement, aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

k. **Rental Property**

"Property damage" to property:

(1) owned by an "Insured"; or

(2) rented to, occupied or used by, or in the care of an "Insured."

The only exceptions to this exclusion are in the case of the Insured's legal obligation to pay damages because of an "occurrence" of "property damage" caused by fire, smoke or explosion.

l. **Bodily Injury or Property Damage to an Insured**

"Bodily injury" or "property damage" to you or to any "Insured" within the meaning of "Insured" as defined in Paragraph E., below.

m. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of the use of any self-propelled land vehicle or "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed, strength or demolition contest or in any stunting activity.

n. **Animal Rides**

"Bodily injury" or "property damage" arising out of:

(1) The use of any animal, with or without an accessory vehicle, for providing rides to any person for a fee or in connection with or during a fair, charitable function or similar type of event.

o. **Communicable Disease**

"Bodily injury" or "property damage" arising out of the transmission of a communicable disease by an "Insured."

p. **Migrant and Seasonal Agricultural Worker Protection Act**

"Bodily injury" or "property damage" awarded under:

(1) the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801 et seq.) (hereinafter "MSAWPA");

(2) any law, due to violation of the MSAWPA; or

(3) any regulation promulgated pursuant to the MSAWPA.

### q. Controlled Substances

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

### r. Lead

This insurance does not apply to:

Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts or consultants arising out of or related in any way, either directly or indirectly to:

1. lead, lead products, lead containing materials or products, lead dust, including, but not limited to, manufacture, mining, use, sale, installation, removal or distribution activities;

2. exposure to, testing for, monitoring of, cleaning up, removing, containing or treating of lead, lead products, lead containing materials or products or lead dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or

"suit" arising out of or related in any way, either directly or indirectly, to lead, lead products, lead containing materials or products, or lead dust.

B. Those provisions of COVERAGE I - PERSONAL AND ADVERTISING INJURY LIABILITY which apply to damages the "Insured" is obligated to pay because of "personal injury" are extended to apply to liability arising out of the "Insured's" personal or non-"business" activities.

With respect to coverage provided by this endorsement, **Section I, Coverage I** is replaced by the following:

### COVERAGE I - PERSONAL INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the "Insured" becomes legally obligated to pay as damage because of "personal injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we have no duty to defend any Insured against a "suit" seeking damages for "personal injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) the amount we will pay for damages is limited as described in **Section III - Limits of Insurance; and**

      (2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages H or medical expenses under Coverage J.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments - Coverages H** and I.

   b. This insurance applies to "personal injury" only if caused by an offense:

C4

**(1)** committed during the policy period; and

**(2)** arising out of the conduct of your personal or non-"business" activities, excluding advertising, publishing, broadcasting or telecasting done by or for you.

## 2. Exclusions

This insurance does not apply to "personal injury":

**a.** For which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to any indemnity obligation the "Insured" has assumed under a written contract directly relating to the ownership, maintenance or use of the "insured location," provided the "personal injury" occurs subsequent to the execution of the contract;

**b.** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the "Insured";

**c.** Arising out of any:

**(1)** refusal to employ;

**(2)** termination of employment;

**(3)** coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

**(4)** consequential "personal injury" as a result of **(1)** through **(3)** above.

Exclusion **2.** applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury;

**d.** Arising out of the "business" pursuits of an "Insured"; or

**e.** Arising out of civic or public activities performed for pay by an "Insured."

**f.** Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

**(1)** The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** at or from any premises, site or location which is or was at any time owned by, or rented or loaned to, any "Insured";

This exclusion does not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a fire, if the fire:

**(i)** is set by the "Insured" on the "insured location"; and

**(ii)** is set for the purpose of burning off crop stubble or other vegetation and is consistent with normal and "farming" agricultural practice; and

**(iii)** is not set in violation of an ordinance or law.

**(b)** at or from any premises, site or location which is or was at any time used by or for any "Insured" or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "Insured" or any person or organization for whom you may be legally responsible; or

**(d)** at or from any premises, site or location on which any "Insured" or any contractors or

subcontractors working directly or indirectly on any "Insured's" behalf are performing operations:

  (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such "Insured," contractor or subcontractor; or

  (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

  (2) Any request, demand or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.

  (3) Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean–up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or containment, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed. Waste does not include natural fertilizers of plant or animal origin while used in normal or usual "farming" operations provided the operations are not in violation of any ordinance or law.

C. **COVERAGE J – MEDICAL PAYMENTS** are replaced by the following with respect to "occurrences" of "bodily injury" to which Coverage H of this endorsement applies:

  1. **Insuring Agreement**

    a. We will pay reasonable medical expenses incurred or medically ascertained within 3 years from the date of an accident causing "bodily injury."

     Reasonable medical expense means expenses incurred or ascertained for:

     (1) first aid at the time of an accident;

     (2) necessary medical, surgical, x–ray and dental services, including prosthetic devices; and

     (3) necessary ambulance, hospital, professional nursing and funeral services.

    b. This coverage applies only:

     (1) to a person (other than an "Insured") on the "insured location" with the permission of any "Insured"; or

     (2) to a person (other than an "Insured") off the "insured location," provided the "bodily injury":

      (a) arises out of a condition on the "insured location" or the ways immediately adjoining it;

      (b) is caused by the activities of an "Insured";

(c) is caused or sustained by a "residence employee" in the course of his or her employment by an "Insured"; or

(d) is caused by an animal owned by or in the care of an "Insured."

No other obligation or liability to pay sums or perform acts or services is covered.

**2. Exclusions**

We will not pay medical expenses for "bodily injury":

a. To a "residence employee" if "bodily injury" occurs:

   (1) off the "insured location"; and

   (2) outside the scope of his or her employment by an "Insured."

b. To any person (other than a "residence employee") regularly residing on any part of the "insured location."

c. To any person, if the "bodily injury" sustained is excluded under Coverage H of this endorsement.

d. To a person injured while taking part in athletics.

e. If "bodily injury" damages are awarded under:

   (1) the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801 et seq.) (hereinafter "MSAWPA");

   (2) any law, due to violation of the MSAWPA; or

   (3) any regulation promulgated pursuant to the MSAWPA.

**D. ADDITIONAL COVERAGE - DAMAGE TO PROPERTY OF OTHERS**

We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "Insured."

But we will not pay for "property damage":

1. To the extent of any amount recoverable under another coverage of this or any other policy;

2. Caused intentionally by an "Insured" who is 13 years of age or older;

3. To property owned by or rented to an "Insured," a tenant of an "Insured," or a member of your household; or

4. Arising out of:

a. "business" pursuits;

b. an act or omission in connection with any premises (other than an "Insured location") that are owned, rented or controlled by the "Insured"; or

c. the ownership, maintenance, or use of aircraft, watercraft, or "motor vehicles" or any other motorized land conveyances.

The only exceptions are in "occurrences" of "property damage" involving motorized land conveyances designed for recreational use off public roads and neither:

   (1) subject to "motor vehicle" registration; nor

   (2) owned by an "Insured."

No other obligation to pay sums or perform acts or services is covered.

**E.** With respect to coverage provided under this endorsement, **SECTION II - WHO IS AN INSURED** is replaced by the following:

1. if you are an individual, you are an "Insured" and, if they are members of your household, your spouse, and you and your spouse's relatives who are under the age of 21 are also "Insureds";

2. any other person under the age of 21 who is a member of your household and is under your care or under the care of a person specified in 1. above, is also an "Insured";

3. any person or organization legally responsible for animals or watercraft owned by you, your spouse or a person specified in

1. above, is also an "Insured." But such a person or organization is an "Insured" only insofar as:

   a. the insurance under this Coverage Form applies to "occurrences" involving animals or watercraft;

   b. that person's or organization's custody or use of the animals or watercraft does not involve "business"; and

   c. that person or organization had the custody or use of the animals with the owner's permission.

4. any person while engaged in the employment of you, your spouse or a person specified in 1. or 2. above, is also an "Insured" but only insofar as the insurance under this endorsement applies to "occurrences" involving vehicles.

5. any other person using a vehicle on the "insured location" with your consent is also an "Insured," but only insofar as the insurance under this endorsement applies to "occurrences" involving vehicles.

F. With respect to **ADDITIONAL COVERAGE - DAMAGE TO PROPERTY OF OTHERS** provided by this endorsement, the following is added to **SECTION IV - FARM GENERAL LI-**

**ABILITY COVERAGE CONDITIONS,** Paragraph 2. Duties in the Event of Occurrence, Offense, Claim or Suit:

   e. If loss occurs under **Additional Coverage - Damage to Property Of Others,** you must:

      (1) submit to us within 60 days after the loss, a signed sworn proof of loss; and

      (2) exhibit the damaged property, if within your control.

G. With respect to coverage provided under this endorsement, **SECTION V - DEFINITIONS** is revised as follows:

   1. Definition **5. "Coverage Territory"** is deleted.

   2. The following is added:

      24. **"Residence premises"** means your principal residence; if you own that residence, "residence premises" also means the grounds and structures appurtenant to it.

         "Residence premises" does not include any part or parts of a building or structure that are used for "business."

Case 4:09-cv-00017-HSM-SKL Document 1 Filed 02/17/09 Page 96 of 118 PageID #: 96

56

SET OF ORIGINAL



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

IL 71 49
(Ed. 07 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## HORSE OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

FARM GENERAL LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" arising out of trail rides offered to the public, public horse rentals, pony rides for the public, riding for the handicapped or other operations or business pursuits not specifically shown or rated for in the policy declarations.

Copyright, Insurance Services Office, Inc., 1998

IL 71 49 (Ed. 07/98) XS

**GREAT**AMERICAN.
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AL 74 05**
(Ed. 04 96)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AGRIPAK FARM AND RANCH POLICY

## RECREATIONAL MOTOR VEHICLE COVERAGE

This endorsement modifies insurance provided under the following:

PERSONAL LIABILITY COVERAGE FORM
FARM GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Recreational Vehicle Make or Model | Serial or Motor Number |
| --- | --- |
| '97 HONDA FORMAN | 478TE2008VA219793 |
| YAMAHA GOLF CART | J93-101589 |
| HONDA 150 | 9C2KE01043R004934 |
| HONDA YA222 | TRX350FM3 |

A.  Insurance under **Coverage H - Bodily Injury and Property Damage Liability** applies to "bodily injury" and "property damage" occurring off the "insured location" and arising out of the ownership, maintenance, use, or "loading or unloading" of the recreational "motor vehicles" described in the Schedule and owned by the "Insured."

B.  Insurance under **Coverage J - Medical Payments** applies to "bodily injury" occurring off the "insured location" and arising out of the ownership, maintenance, use, or "loading or unloading" of the recreational "motor vehicles" described in the Schedule and owned by the "Insured."

C.  If this endorsement is made part of the **Farm General Liability Coverage Form** or **Personal Liability Coverage Form,** this endorsement modifies and is subject to the provisions of Coverage H.

D.  With respect to the recreational "motor vehicles" described in the Schedule, the definition of the "Insured" includes any person or organization legally responsible for a recreational "motor vehicle" owned by any "Insured"; it does not include a person or organization using or having custody or possession of a recreational "motor vehicle" without the permission of the owner.

E.  This Coverage does not apply to any recreational "motor vehicle":

   1.  subject to the Motor Vehicle Registration Act.

   2.  while used to carry persons for charge;

   3.  while rented to others; or

   4.  while being operated in, or in practice for, any prearranged or organized race, speed contest or other competition, or in practice or preparation for any such contest or activity.

Case 4:09-cv-00017-HSM-SKL   Document 1   Filed 02/17/09   Page 98 of 118   PageID #: 98

Page 1 of 1

58

GREATAMERICAN.
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AL 74 06**
(Ed. 05 00)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AGRIPAK FARM AND RANCH POLICY

## FARM EMPLOYERS LIABILITY AND FARM EMPLOYEES MEDICAL PAYMENTS INSURANCE

This endorsement modifies insurance provided under the following:

FARM GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

**(A)  Coverages**                                    **Limits of Insurance**

N.   Farm Employers Liability           $   500,000.      each "occurrence"

O.   Farm Employees Medical Payments    $     5,000.      each "farm employee"

**(B)**                          **Per Capita Rating Basis**

| Farm Employees | Number | Rate | Premium |
|---|---|---|---|
| Full Time (working 90 days per year or longer) | 1 | $62.00 | $62.00 |
| Part Time (per 100 man days or part) | 1 | $22.00 | $22.00 |
| Residence Employee (in excess of 2) | | | |

(C)   Employees to Whom the Provisions of This Endorsement Do Not Apply:

\*   Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

## SECTION I - COVERAGES

The following insuring agreements and exclusions are added to **SECTION I - COVERAGES** of the Farm Liability Coverage Form:

### COVERAGE N - FARM EMPLOYERS LIABILITY

1. **Additional Insuring Agreement**

   a. We will pay those sums that the "Insured" becomes legally obligated to pay as damages because of "bodily injury" to which this insurance applies. The "bodily injury" must:

      (1) be caused by an "occurrence";

      (2) be sustained by a "farm employee"; and

      (3) arise out of and in the course of the injured employee's employment by the "Insured"; this employment must involve ownership, maintenance or use of portions of the "insured location" that are owned or operated for "farming" purposes. As used here, the terms ownership, maintenance and use include operations necessary or incidental to ownership, maintenance and use.

   b. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

   c. We will have the right and duty to defend any "suit" seeking damages of the kind described in Paragraph **a.** However, we have no duty to defend any "Insured" against a "suit" seeking damages for "bodily injury" to which this insurance does not apply.

   We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   But our right and duty to defend end when we have used up the Limit of Insurance shown in the Schedule in payment of judgments or settlements.

   d. No other obligation or liability to pay sums or perform acts or services is covered.

2. **Additional Exclusions**

   The insurance afforded under this endorsement does not apply to:

   a. "bodily injury" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement;

   b. "bodily injury" sustained by any "farm employee" unless, within 36 months of the end of the policy period, written claim is made or "suit" is brought against the "Insured" for damages because of the "bodily injury";

   c. "bodily injury" sustained by any employee while engaged in the operation or maintenance of aircraft:

   As used in this endorsement, aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

   d. "bodily injury" to any employee eligible to receive any benefits that an "Insured" voluntarily provides or is required to provide under any workers' compensation, disability benefits or unemployment compensation law or any similar law;

e.    "bodily injury" to any employee employed in violation of law with your knowledge or consent;

f.    punitive or exemplary damages for "bodily injury" to any employee employed in violation of law.

g.    "bodily injury" arising out of any:

    (1)    refusal to employ;

    (2)    termination of employment;

    (3)    coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment–related practices, policies, acts or omissions; or

    (4)    consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the "Insured" may be held liable as employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

h.    "bodily injury" to the spouse, child, parent, brother or sister of a "farm employee" as a consequence of "bodily injury" to that employee.

i.    "bodily injury" damages awarded under:

    (1)    the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801 et seq.) (hereinafter "MSAWPA");

    (2)    any law, due to violation of the MSAWPA; or

    (3)    any regulation promulgated pursuant to the MSAWPA.

## COVERAGE O - FARM EMPLOYEES MEDICAL PAYMENTS

**1.    Additional Insuring Agreement**

a.    We will pay, to or for each "farm employee" who sustains "bodily injury" caused by an accident, all reasonable medical expenses to which this insurance applies.

The "bodily injury" must arise out of and in the course of the injured employee's employment by the "Insured," and this employment must involve ownership, maintenance or use of portions of the "insured location" that are owned or operated for "farming" purposes. As used here, the terms ownership, maintenance and use include operations necessary or incidental to ownership, maintenance and use.

b.    We will pay these expenses regardless of fault.

c.    Reasonable medical expenses means expenses incurred or medically ascertained for:

    (1)    first aid administered at the time of an accident;

    (2)    necessary medical, surgical, x–ray and dental services, including prosthetic devices; and

    (3)    necessary ambulance; hospital, professional nursing and funeral services.

d.    This insurance applies only to reasonable medical expenses incurred or medically ascertained within 3 years of the date of the accident.

L 74 06 (Ed. 05/00) PRO      (Page 3 of 5)       60

**e.** No other obligation or liability to pay sums or perform acts or services is covered.

**2. Additional Exclusions**

The insurance afforded under this endorsement does not apply to:

**a.** "bodily injury" sustained by an employee while engaged in the operation or maintenance of aircraft; or

**b.** "bodily injury" to any employee eligible to receive any benefits that an "Insured" voluntarily provides or is required to provide under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**c.** "bodily injury" damages awarded under:

   **(1)** the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801 et seq.) (hereinafter "MSAWPA");

   **(2)** any law, due to violation of the MSAWPA; or

   **(3)** any regulation promulgated pursuant to the MSAWPA.

## SECTION II - WHO IS AN INSURED

**1.** The **Farm General Liability Coverage Form, Section II - Who Is An Insured** of that Coverage Form does not apply to the insurance afforded under this endorsement.

**2.** With respect to the insurance afforded under this endorsement, the following applies:

If you are designated in the Declarations as:

**a.** An individual, you are an "Insured," and, if they are members of your household, your spouse, and your spouse's relatives who are under the age of 21, are also "Insureds."

**b.** A partnership or joint venture, you are an "Insured." Your members and partners, and their spouses are also "Insureds," but only with respect to the conduct of your "farming" operations.

**c.** An organization other than a partnership or joint venture, you are an "Insured." Your executive officers and directors are "Insureds," but only with respect to their duties as your officers or directors. Your stockholders are also "Insureds," but only with respect to their liability as stockholders.

No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limit of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**a.** "Insureds";

**b.** persons who sustain "bodily injury"; or

**c.** claims made or "suits" brought on account of "bodily injury."

**?** The Limit of Insurance shown in the Schedule for **FARM EMPLOYERS LIABILITY** is the most we will pay for all damages as the result of any one "occurrence."

**3.** The Limit of Insurance shown in the Schedule for **FARM EMPLOYEES MEDICAL PAYMENTS** as applicable to each "farm employee" is the most we will pay for all medical expense for "bodily injury" to any one "farm employee" as the result of any one accident



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

. **AL 74 14**
(Ed. 05 90)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AGRIPAK FARM AND RANCH POLICY

## ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

FARM GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

**Name of Person or Organization:**

JOHN PUCKETT
1101 WHITESIDE HILL RD
WARTRACE, TN 37183

**Who Is An Insured** (Section II) is amended to include as an "Insured" the person or organization shown in the Schedule as an "Insured," but only with respect to liability arising out of your operations or premises owned by or rented to you.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AL 74 54**
(Ed. 01 98)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AGRIPAK®

### NAMED PERSONAL LIABILITY

This endorsement modifies insurance provided under the following:

FARM LIABILITY COVERAGE FORM

Personal liability afforded by form AL 7404 is provided only for those individuals listed below:

SCOT POTTER
KATHY POTTER

This endorsement does not change any other provision of the policy.

Case 4:09-cv-00017-HSM-SKL   Document 1   Filed 02/17/09   Page 105 of 118   PageID #: 105

(Page 1 of 1)

63

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITED TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM GENERAL LIABILITY COVERAGE PART AND PERSONAL LIABILITY COVERAGE ENDORSEMENT
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**Terrorism**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism." However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purpose of this provision, serious physical injury means:

    a. physical injury that involves a substantial risk of death; or

    b. protracted and obvious physical disfigurement; or

    c. protracted loss of or impairment of the function of a bodily member or organ; or

3. the terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. the terrorism is carried out by means of the dispersal of application of pathogenic or poisonous biological or chemical materials; or

5. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, **"any injury or damage"** means any injury or damage covered under any Coverage Part to which this endorsement is applica-

Copyright, ISO Properties, Inc., 2002

CG 21 71 (Ed. 12/02) XS

ble, and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. **"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. the act resulted in aggregate losses in excess of $5 million; and

   b. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. **"Other act of terrorism"** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals

and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any ( government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

D. With respect to any one or more "certified acts of terrorism," we will not pay any amounts for which we are not responsible ( under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

(

CG 21 76
(Ed. 11 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM GENERAL LIABILITY COVERAGE PART AND PERSONAL LIABILITY COVERAGE ENDORSEMENT
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**Terrorism Punitive Damages**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

B. The following definition is added:

**Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.

The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. the act resulted in aggregate losses in excess of $5 million; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright, ISO Properties, Inc., 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

FILED

2008 DEC -8  A 9 57

U.S. DISTRICT COURT
EASTERN DIST. TENN.

| | |
|---|---|
| CHARLES E. CHEEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 41:08-av-81(Collier) |
| | ) |
| JOHN PUCKETT, JOHN PUCKETT | ) |
| and HOLLY PUCKETT d/b/a PUCKETT | ) |
| STABLES, DANLON FARMS, LLC., | ) |
| EDWARD SCOTT POTTER, and | ) |
| KATHY POTTER, | ) |
| | ) |
| Defendants. | ) |

Mattice / Carter

## COMPLAINT

This complaint is for loss of property and economic damages suffered by Plaintiff arising out of Defendants' joint and several breaches of bailment, Defendants' joint and several negligence, and the Puckett Defendants' breaches of contract.

### PARTIES

1.  Plaintiff Charles E. Cheek is a resident of Houston, Harris County, Texas.

2.  Defendant John Puckett is a trainer/breeder/caretaker of Tennessee Walking Horses and does business with Defendant Holly Puckett as Defendant Puckett Stables (hereinafter collectively "Puckett"). On information and belief, it is submitted that John and Holly Puckett have operated as a *de facto* partnership with reference to the facts alleged herein. The Puckett Defendants are located within the jurisdiction of this Court and may be served at 1101 Whiteside Hill Road, Wartrace, Tennessee 37183.

**EXHIBIT**

B

3.      Defendant Danlon Farms, LLC (hereinafter "Danlon Farms") was a limited liability company organized and existing in the state of Tennessee at all times material to the allegations herein. Danlon Farms was in the business of providing to the public "Quality Care for Your Broodmares, Weanlings and Yearlings" and was located within the jurisdiction of this Court. Danlon Farms may be served through Edward Scott Potter and/or Kathy Potter

4.      Defendants Edward Scott Potter and Kathy Potter (collectively hereinafter "Potter") were the owners/operators/officers/employees and/or agents of Danlon Farms at all times material to the allegations herein, and are located within the jurisdiction of this Court. At all times material hereto, Defendants Edward Scott Potter and Kathy Potter were husband and wife. Defendant Edward Scott Potter and Kathy Potter may be served at 435 Squire Hall Road, Shelbyville, Tennessee 57160-7178.

5.      At all times material to the grave injury and resulting death of "The Lady Doc," as hereinafter alleged, Puckett conducted business at Danlon Farms.

## JURISDICTION

6.      This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 (Diversity Jurisdiction). The damages in this case surpass the jurisdictional minimum.

## VENUE

7.      Venue is proper in this case as some of the Defendants are located within the jurisdiction of this Court and the actions giving rise to this Complaint occurred in this district.

A faint illegible line appears at top

## FACTS

8.    Plaintiff acquired "The Lady Doc," Tennessee Walking Horse Breeders' and Exhibitors' Association ("TWHBEA") Registration No. 951006, on July 15, 1998. The mare was a proven show horse with world grand champion bloodlines. The purchase cost to Plaintiff for "The Lady Doc" was One Hundred Ten Thousand and 00/100 Dollars (\$110,000.00). Thereafter, Plaintiff incurred costs exceeding Fifty Thousand and 00/100 Dollars (\$50,000.00) for the care, training, showing and breeding of "The Lady Doc."

9.    Under Plaintiff's ownership, "The Lady Doc" was successfully shown for several years in competitive amateur and professional events. In the Spring of 2001, Plaintiff had "The Lady Doc" bred to World Grand Champion "The Skywatch" to begin producing foals for development and ultimate sale to the public. On or about May 7, 2002, "The Lady Doc" gave birth to a healthy and sound filly from this breeding (hereinafter "Skywatch Filly").

10.    On or about May 15, 2002, Plaintiff entered a contract with John Puckett to board, maintain and in all respects care for "The Lady Doc" and the Skywatch Filly without cost to Plaintiff. The contract also required Puckett to train, board, develop, and market the Skywatch Filly and future foals of "The Lady Doc" without cost to Plaintiff. In exchange, Puckett held an undivided financial interest in the sale of the Skywatch Filly and a production interest in "The Lady Doc" as to future foals produced by her. In return, Plaintiff agreed to pay stud fees attributable to breeding the mare for the production of future foals.

11.    This contract was in full force and effect at all times relevant hereto. Plaintiff has satisfied all conditions and met all obligations there under.

12.   On or about May 15, 2002, and pursuant to the above-referenced contract, Plaintiff delivered "The Lady Doc" and The Skywatch Filly, both in sound condition, to Puckett at Danlon Farms.   Puckett accepted delivery of the mare and foal at Danlon Farms with the knowledge and consent of Potter.

13.   Plaintiff purchased a stud fee to World Grand Champion "Broken Promises" at a cost of $1,500.00 for the purpose of breeding "The Lady Doc" toward producing her second foal.  Puckett arranged for "The Lady Doc" to be bred to "Broken Promises" pursuant to the stud fee purchased by Plaintiff.  The mare was thereafter declared safe in foal to "Broken Promises."

14.   Sometime thereafter, Puckett moved "The Lady Doc," then in foal to "Broken Promises," and the Skywatch Filly from Danlon Farms to rural property on which Puckett resided, near Wartrace, Tennessee.

15.   In the spring of 2003, the foal from breeding "The Lady Doc" to "Broken Promises" was born a few weeks premature and dead.  Upon information and belief, this late term abortion was proximately caused by Puckett's failure to properly care for, maintain, and look after the "The Lady Doc," while in foal to "Broken Promises."

16.   Shortly thereafter, Puckett returned "The Lady Doc" to Danlon Farms. Upon information and belief, the mare was stabled at facilities on Danlon Farms until after being re-bred to "Broken Promises."

17.   Then, upon information and belief, "The Lady Doc" was delivered by Puckett in sound condition and in foal to Danlon Farms and/or Potter and was put in the pasture at Danlon Farms to be cared for along with other broodmares under the care of Danlon Farms and/or Potter.

18. Upon information and belief, Danlon Farms and/or Potter accepted delivery of "The Lady Doc." Upon information and belief, Danlon Farms and/or Potter were to look after and care for "The Lady Doc" while in their pasture, along with the other broodmares in the same pasture owned by Defendants and/or third-parties.

19. Upon information and belief, "The Lady Doc" was discovered, on or about August 18, 2003, in the pasture of Danlon Farms, by an agent(s) or employee(s) or family member(s) of Defendants, standing free, but without hoof and with missing and decaying flesh on one of the mare's hind limbs and with a putrid odor emanating from her.

20. Defendants had not found, checked-on, or inspected the mare or otherwise discovered her situation or injuries until grave harm had been done.

21. Upon information and belief, Defendants then inspected the mare found no current bleeding or old blood on the decaying leg. Instead, Defendants found that one of "The Lady Doc's" rear hooves was gone, that bones were exposed on the same hind limb, and that large chunks of skin and flesh were missing and that some remaining flesh on that hind limb appeared to be rotting.

22. Upon information and belief, Defendants shortly thereafter contacted an experienced equine veterinarian, who thereafter arrived at Danlon Farms to examine the mare. He found evidence on "The Lady Doc's" injured hind limb of two horizontal and parallel marks above the area of missing and decayed flesh on her hind limb. The veterinarian determined that the injured hind limb of the mare had suffered a strangulation of the blood supply, which had caused the lower portions of her otherwise healthy hind limb and hoof to die, rot-off and putrefy due to lack of blood supply.

23.     After his examination, the veterinarian recommended that "The Lady Doc" be humanely euthanized. Plaintiff and Puckett accepted the recommendation. The veterinarian then euthanized "The Lady Doc."

24.     Upon information and belief, the veterinarian did not charge Defendants or Plaintiff for his examination, diagnosis, and euthanizing of "The Lady Doo" in light of the horrific injury suffered by the mare.

25.     After "The Lady Doc" was euthanized, Puckett found and recovered her missing hind hoof with the frog (sole) still attached.

26.     Upon information and belief, these body parts of "The Lady Doc" were found in a small depression along the fence line of the Danlon Farms' pasture, where the mare had been pastured and found gravely injured.

27.     Upon information and belief, "The Lady Doc's" injured hind leg had been hung in the plastic fence of the pasture, causing the strangulation and subsequent rot of the lower portion of her hind leg.

28.     Upon information and belief, after the hoof and substantial flesh rotted off her hind leg, "The Lady Doc" was only then able to extract herself from the constraint of the plastic fence.

29.     Upon information and belief, she had been without food, water, or care until she was able to free herself and limp on her rotting hind leg to food and water and where she was ultimately discovered by Defendants on or about August 18, 2003.

30.     Defendants failure to properly care for, maintain, and look after "The Lady Doc," or even discover her plight, resulted in her irreparable injury and death, the

loss of her unborn foal from being re-bred to "Broken Promises,' and the loss of all future production of foals from "The Lady Doc."

31     From May 15, 2002, when Plaintiff and Puckett entered the contract of reference herein and Puckett accepted from Plaintiff delivery of "The Lady Doc" and her Skywatch Filly at Danlon Farms, through March 4, 2005, when Puckett entered and sold the Skywatch Filly at Sand Creek Sales, Inc., Puckett was exclusively responsible for the care, maintenance, training, development and marketing of the Skywatch Filly.

32.     Puckett neglected the development, training and marketing of the Skywatch Filly. Although under his care for nearly three (3) years, the filly could not be mounted to ride without being tied-up or held by a ground man. Upon information and belief, he failed routinely to halter or lead her as a weanling or yearling and failed consistently to cart, ride, or train her thereafter.

33.     Puckett failed to market the Skywatch Filly for sale to third-parties. On information and belief, he failed reasonably to show her to or inquire as to interest in her purchase by potential, third-party purchasers.

34.     Puckett ultimately entered the Skywatch Filly in a dispersal sale at public auction. Upon information and belief, he accepted the last bid. He did so without consultation with Plaintiff as to such bid. Puckett arranged for the auction settlement check to be sent directly to Plaintiff, but failed to reimburse Plaintiff for deductions to the settlement check associated with the selling costs at the auction.

35.     Plaintiff has suffered the loss of his property and economic damages as a result of Defendants' joint and several actions alleged herein.

### COUNT 1 – AS TO PUCKETT, FAILURE OF BAILEE, TO RETURN THE BAILMENT TO BAILOR, IN PROPER CONDITION

36.     Plaintiff restates the allegations contained in paragraphs 1-35.

37.     At all times material hereto, Puckett was in the business of caring for broodmares and their foals, as well as training Tennessee Walking Horses.

38.     Plaintiff delivered his brood mare, "The Lady Doc," to Puckett in sound condition. Puckett has not and cannot return "The Lady Doc" to Plaintiff in a similar condition.

39.     Puckett is in breach of his bailment of Plaintiff's property and is liable to Plaintiff for the replacement and/or value of such property and the damages suffered by Plaintiff pending such replacement or payment.

**COUNT II – AS TO DANLON FARMS AND POTTER, FAILURE OF BAILEE,**

**TO RETURN THE BAILMENT TO BAILOR, IN PROPER CONDITION**

40.     Plaintiff restates the allegations contained in paragraphs 1-35.

41.     At all times material hereto, Danlon Farms and Potter were in the business of caring for broodmares and their foals.

42.     Puckett delivered Plaintiff's broodmare, "The Lady Doc," to Danlon Farms and/or Potter in sound condition. Danlon Farms and Potter have not and cannot return "The Lady Doc" to Plaintiff in a similar condition.

43.     Danlon Farms and/or Potter is/are in breach of the bailment of Plaintiff's property and are liable to Plaintiff for the replacement and/or value of such property and damages suffered by Plaintiff pending such replacement or payment.

**COUNT III – AS TO PUCKETT, NEGLIGENCE**

44.     Plaintiff restates the allegations contained in paragraphs 1-35.

45. Puckett owed Plaintiff a duty of care for "The Lady Doc.". Puckett breached that duty and as a result the mare's "Broken Promises" foal was aborted.

46. Puckett owed Plaintiff a duty of care for "The Lady Doc." Puckett breached that duty and as a result the mare, while back in foal to "Broken Promises," was gravely injured and was consequently euthanized.

47. Puckett's negligence was the proximate cause of damages to Plaintiff.

### COUNT IV – AS TO DANLON FARMS AND/OR POTTER,

### NEGLIGENCE

48. Plaintiff restates the allegations contained in paragraphs 1-35.

49. Danlon Farms and Potter owed Plaintiff a duty of care for "The Lady Doc" while pastured on their property. These Defendants breached that duty and "The Lady Doc" was gravely injured and was consequently euthanized.

50. Such negligence by Danlon Farms and Potter was the proximate cause of damages to Plaintiff.

### COUNT V – AS TO PUCKETT, BREACHES OF CONTRACT

51. Plaintiff restates the allegations contained in paragraphs 1-35.

52. Defendant John Puckett, individually and as agent for Defendants John and Holly Puckett d/b/a Defendant Puckett Stables, contracted with Plaintiff to provide a safe environment for and proper care to "The Lady Doc." These Puckett Defendants failed to do so causing "The Lady Doc" to abort her foal by "Broken Promises."

53. Defendant John Puckett, individually and as agent for Defendants John and Holly Puckett d/b/a Defendant Puckett Stables, contracted with Plaintiff to provide a safe environment for and proper care to "The Lady Doc." These Puckett Defendants

failed to do so causing "The Lady Doc," while back in foal to "Broken Promises," to be gravely injured and consequently euthanized.

54.     Defendant John Puckett, individually and as agent for Defendants John and Holly Puckett d/b/a Defendant Puckett Stables, contracted with Plaintiff to train, develop, and market the Skywatch Filly at no cost to Plaintiff. These Puckett Defendants adequately to train, develop, and market the Skywatch Filly and then forced Plaintiff to incur, without reimbursement, costs of the auction sale of the Skywatch Filly.

54.     Each and all of such actions by these Puckett Defendants are in breach of their contract with Plaintiff and Plaintiff has suffered damages as a result thereof.

### DAMAGES

WHEREFORE, Plaintiff demands that a trial by jury be had on all Counts and that following such trial, judgment be entered on Plaintiff's behalf against Defendants, individually, jointly and severally:

1.     For all losses and damages suffered by Plaintiff, which losses and damages exceed the jurisdictional limits of the Court;

2.     For Plaintiff's costs of this action; and,

3.     For such further and additional relief as the Plaintiff may show and the Court may deem appropriate.

Respectfully submitted
This ⸏⸏ day of December 2008,

Mark A. Polk          BPRN 22238
107 West College Street
Murfreesboro, Tennessee 37130
615) 893-6592