IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

GREAT AMERICAN INSURANCE CO. )
                                      )
     Petitioner, )
                                        )
vs. )        Civil Action No. 4:09-cv-17
                                        )
EDWARD SCOT POTTER, )
KATHY POTTER, )
DANLON FARMS, L.L.C., )
JOHN PUCKETT, )
JOHN PUCKETT and HOLLY )
PUCKETT, d/b/a PUCKETT STABLES, )
and CHARLES E. CHEEK, )
                                        )
     Respondents. )
                                        )
EDWARD SCOT POTTER, )
KATHY POTTER, )
DANLON FARMS, L.L.C., )
JOHN PUCKETT, )
JOHN PUCKETT and HOLLY )
PUCKETT, d/b/a PUCKETT STABLES, )
                                        )
     Third Party Plaintiffs, )
vs. )
                                        )
ESTATE OF STEVE LIDDELL )
d/b/a S.H. LIDDELL INSURANCE AGENCY, )
HOLLY LIDDELL, Individually and as agent )
for S.H. LIDDELL INSURANCE AGENCY )
and BARNES EQUINE INSURANCE AGENCY,)
                                        )
     Third Party Defendants, )

## THIRD PARTY COMPLAINT

     Come Now the Third Party Plaintiffs, EDWARD SCOT POTTER, KATHY POTTER,

JOHN PUCKETT AND HOLLY PUCKETT, and to such extent as is appropriate on behalf of

PUCKETT STABLES, and the now extinct DANLON FARMS, LLC for their cause of action

against the Third Party Defendants, ESTATE OF STEVE LIDDELL d/b/a S. H. LIDDELL

INSURANCE AGENCY, HOLLY LIDDELL, individually and as agent for S. H. LIDDELL INSURANCE AGENCY and BARNES EQUINE INSURANCE AGENCY, by and through their undersigned attorney, pursuant to *Federal Rules of Civil Procedure 14(a)*, and file this as their Third Party Complaint and state as follows:

1. Third Party Defendant, Estate of Steve Liddell d/b/a S. H. Liddell Insurance Agency, at all times in question was in the practice of selling insurance policies for the principal purpose of insuring horse farms. S. H. Liddell Insurance Agency sold equine insurance policies for many years for horses stabled in Tennessee.

2. Third Party Defendant, Holly Liddell, was an insurance agent for S. H. Liddell Insurance Agency at all times in question regarding this lawsuit.

3. The Third Party Plaintiffs approached the Third Party Defendant, S. H. Liddell Insurance Agency, through its agent, Holly Liddell, and requested an insurance policy that would cover any equine operations on their farm and property. Third Party Plaintiffs specifically requested coverage for the activities of Johnny Puckett in running a horse training and boarding business on the Potters' property. Third Party Plaintiffs relied on the experience and honesty of the insurance agent to fulfill this request.

4. The Agent for the Third Party Defendants, Holly Liddell, procured a policy of insurance for the Third Party Plaintiffs that was issued through Great American Insurance Company. That policy has been identified in the original complaint for Declaratory Judgment as policy no. APK 1-97-44-39-03. Effective dates on the policy were from April 4, 2003 to April 4, 2004. John Puckett is an additional insured on the policy.

5. The Third Party Plaintiffs have promptly paid all premiums related to this policy.

6. Third Party Plaintiff, Johnny Puckett, subsequently entered into an agreement with Paulette T. Cheek and Charles E. Cheek to stable, care for, and bring to foal a brood mare called "The Lady Doc".

7. In mid August, 2003, Johnny Puckett placed "The Lady Doc" in a pasture on the farm owned by Third Party Plaintiffs, Scot and Kathy Potter. The mare was found with an injured hoof on August 18, 2003 and the Cheeks elected to destroy the mare.

8. The Third Party Plaintiffs notified agent Holly Liddell immediately upon learning of a threat of a lawsuit related to the death of the horse in this underlying lawsuit, and have otherwise fulfilled all obligations of an insured under this policy. Third Party Defendant, Holly Liddell, assured the Third Party Plaintiffs there would be no problem with their insurance coverage in this matter.

9. Charles and Paulette Cheek subsequently filed suit against all Third Party Plaintiffs in the United States Eastern District Court, No. 4:04-cv-73, asserting causes of action in bailment, negligence, and breach of contract. That case was ultimately dismissed by voluntary non-suit and then refiled as Case 4:08-cv-97. Exhibit A.

10. Great American Insurance Company refused to defend the Third Party Plaintiffs on both occasions, citing exclusions as stated in their Complaint in this action. Exhibit B.

11. The Third Party Defendants were negligent in failing to diligently perform their duties as insurance agents on behalf of the Third Party Plaintiffs with whom a fiduciary relationship existed.

12. The Third Party Defendants were negligent in failing to properly inform and/or misinformed the Third Party Plaintiffs about the terms and conditions of the policy in question, when the Third Party Defendants knew or should have known the terms of the policy.

13. The Third Party Defendants owed a duty to the Third Party Plaintiffs to provide them proper information concerning the insurance policy in question for equine operations on the subject property.

14. The Third Party Defendants violated the Tennessee Consumer Protection Act, TCA § 56-8-104 engaging in unfair and deceptive trade practices.

15. Steve Liddell is deceased and S. H. Liddell Insurance Agency has been sold to Barnes Equine Insurance Agency. The Third Party Plaintiffs allege that Barnes Equine Insurance Agency would therefore be liable for all causes of action that could have been brought against Steve Liddell d/b/a S. H. Liddell Insurance Agency as a result of this transaction.

16. All allegations previously alleged against Steve Liddell d/b/a S. H. Liddell Insurance agency are hereby incorporated as alleged against Barnes Equine Insurance Agency.

WHEREFORE, THE THIRD PARTY PLAINTIFFS PRAY for the following:

1. That proper process issue and be served upon the Third Party Defendants, compelling them to appear and answer this Complaint.

2. Judgment against the Third Party Defendants for damages including costs, attorney's fees and other compensatory and punitive damages as the Court may see fit arising from any judgment rendered against the Third Party Plaintiffs from the underlying lawsuit, Cheek v. Puckett, et. al.

3. Judgment against the Third Party Defendants for One Hundred Sixty Thousand ($160,000.00) Dollars in damages, as well as attorney's fees and court costs.

4. Grant such other relief as appropriate under the *Tennessee Consumer Protection Act* for unfair and deceptive trade practices.

5. Any further and other relief for which the Third Party Plaintiffs may be entitled.

Respectfully submitted,

SWAFFORD, PETERS, PRIEST & HALL.

By: /s/ Michael D. Hall
Michael D. Hall No: 20415
Attorney for Respondents/Third Party Plaintiffs
120 North Jefferson Street
Winchester, Tennessee 37398
(931) 967-3888

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. All other parties will be served by regular U. S. Mail, postage prepaid, this _____ day of April, 2009 to:

Mark S. LeVan, Esquire
Christopher M. Jones, Esquire
LeVan, Sprader, Patton & McCaskill
150 Fourth Avenue North, Suite 1020
Nashville, TN 37219
Attorneys for Petitioner
Ph:     (615) 843-0300
Fax:    (615) 843-0310

Mark A. Polk, Esquire
107 West College Street
Murfreesboro, TN 37130
Attorney for Cheek

Holly Liddell
299 Temple Ford Road
Shelbyville, TN 37160

Holly Liddell as Executrix for
Estate of Steve Liddell
299 Temple Ford Road
Shelbyville, TN 37160

Barnes Equine Insurance Agency
120 Community Center Drive
Pigeon Forge, TN

/s/ Michael D. Hall
Michael D. Hall

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

CHARLES E. CHEEK,                          )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )     Civil Action No. _____
                                            )
JOHN PUCKETT, JOHN PUCKETT                  )     Mattice | Carter
and HOLLY PUCKETT d/b/a PUCKETT             )
STABLES, DANLON FARMS, LLC.,                )
EDWARD SCOTT POTTER, and                    )
KATHY POTTER,                               )
                                            )
            Defendants.                     )

## COMPLAINT

This complaint is for loss of property and economic damages suffered by Plaintiff arising out of Defendants' joint and several breaches of bailment, Defendants' joint and several negligence, and the Puckett Defendants' breaches of contract.

### PARTIES

1.    Plaintiff Charles E. Cheek is a resident of Houston, Harris County, Texas.

2.    Defendant John Puckett is a trainer/breeder/caretaker of Tennessee Walking Horses and does business with Defendant Holly Puckett as Defendant Puckett Stables (hereinafter collectively "Puckett"). On information and belief, it is submitted that John and Holly Puckett have operated as a *de facto* partnership with reference to the facts alleged herein. The Puckett Defendants are located within the jurisdiction of this Court and may be served at 1101 Whiteside Hill Road, Wartrace, Tennessee 37183.

**EXHIBIT A**

3.     Defendant Danlon Farms, LLC (hereinafter "Danlon Farms") was a limited liability company organized and existing in the state of Tennessee at all times material to the allegations herein. Danlon Farms was in the business of providing to the public "Quality Care for Your Broodmares, Weanlings and Yearlings" and was located within the jurisdiction of this Court. Danlon Farms may be served through Edward Scott Potter and/or Kathy Potter

4.     Defendants Edward Scott Potter and Kathy Potter (collectively hereinafter "Potter") were the owners/operators/officers/employees and/or agents of Danlon Farms at all times material to the allegations herein, and are located within the jurisdiction of this Court. At all times material hereto, Defendants Edward Scott Potter and Kathy Potter were husband and wife. Defendant Edward Scott Potter and Kathy Potter may be served at 435 Squire Hall Road, Shelbyville, Tennessee 57160-7178.

5.     At all times material to the grave injury and resulting death of "The Lady Doc," as hereinafter alleged, Puckett conducted business at Danlon Farms.

JURISDICTION

6.     This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 (Diversity Jurisdiction). The damages in this case surpass the jurisdictional minimum.

VENUE

7.     Venue is proper in this case as some of the Defendants are located within the jurisdiction of this Court and the actions giving rise to this Complaint occurred in this district.

## FACTS

8.     Plaintiff acquired "The Lady Doc," Tennessee Walking Horse Breeders' and Exhibitors' Association ("TWHBEA") Registration No. 951006, on July 15, 1998. The mare was a proven show horse with world grand champion bloodlines. The purchase cost to Plaintiff for "The Lady Doc" was One Hundred Ten Thousand and 00/100 Dollars ($110,000.00). Thereafter, Plaintiff incurred costs exceeding Fifty Thousand and 00/100 Dollars ($50,000.00) for the care, training, showing and breeding of "The Lady Doc."

9.     Under Plaintiff's ownership, "The Lady Doc" was successfully shown for several years in competitive amateur and professional events. In the Spring of 2001, Plaintiff had "The Lady Doc" bred to World Grand Champion "The Skywatch" to begin producing foals for development and ultimate sale to the public. On or about May 7, 2002, "The Lady Doc" gave birth to a healthy and sound filly from this breeding (hereinafter "Skywatch Filly").

10.     On or about May 15, 2002, Plaintiff entered a contract with John Puckett to board, maintain and in all respects care for "The Lady Doc" and the Skywatch Filly without cost to Plaintiff. The contract also required Puckett to train, board, develop, and market the Skywatch Filly and future foals of "The Lady Doc" without cost to Plaintiff. In exchange, Puckett held an undivided, financial interest in the sale of the Skywatch Filly and a production interest in "The Lady Doc" as to future foals produced by her. In return, Plaintiff agreed to pay stud fees attributable to breeding the mare for the production of future foals.

11.     This contract was in full force and effect at all times relevant hereto. Plaintiff has satisfied all conditions and met all obligations there under.

12.     On or about May 15, 2002, and pursuant to the above-referenced contract, Plaintiff delivered "The Lady Doc" and The Skywatch Filly, both in sound condition, to Puckett at Danlon Farms. Puckett accepted delivery of the mare and foal at Danlon Farms with the knowledge and consent of Potter.

13.     Plaintiff purchased a stud fee to World Grand Champion "Broken Promises" at a cost of $1,500.00 for the purpose of breeding "The Lady Doc" toward producing her second foal. Puckett arranged for "The Lady Doc" to be bred to "Broken Promises" pursuant to the stud fee purchased by Plaintiff. The mare was thereafter declared safe in foal to "Broken Promises."

14.     Sometime thereafter, Puckett moved "The Lady Doc," then in foal to "Broken Promises," and the Skywatch Filly from Danlon Farms to rural property on which Puckett resided, near Wartrace, Tennessee.

15.     In the spring of 2003, the foal from breeding "The Lady Doc" to "Broken Promises" was born a few weeks premature and dead. Upon information and belief, this late term abortion was proximately caused by Puckett's failure to properly care for, maintain, and look after the "The Lady Doc," while in foal to "Broken Promises."

16.     Shortly thereafter, Puckett returned "The Lady Doc" to Danlon Farms. Upon information and belief, the mare was stabled at facilities on Danlon Farms until after being re-bred to "Broken Promises."

17.     Then, upon information and belief, "The Lady Doc" was delivered by Puckett in sound condition and in foal to Danlon Farms and/or Potter and was put in the pasture at Danlon Farms to be cared for along with other broodmares under the care of Danlon Farms and/or Potter.

18.     Upon information and belief, Danlon Farms and/or Potter accepted delivery of "The Lady Doc." Upon information and belief, Danlon Farms and/or Potter were to look after and care for "The Lady Doc" while in their pasture, along with the other broodmares in the same pasture owned by Defendants and/or third-parties.

19.     Upon information and belief, "The Lady Doc" was discovered, on or about August 18, 2003, in the pasture of Danlon Farms, by an agent(s) or employee(s) or family member(s) of Defendants, standing free, but without hoof and with missing and decaying flesh on one of the mare's hind limbs and with a putrid odor emanating from her.

20.     Defendants had not found, checked-on, or inspected the mare or otherwise discovered her situation or injuries until grave harm had been done.

21.     Upon information and belief, Defendants then inspected the mare found no current bleeding or old blood on the decaying leg. Instead, Defendants found that one of "The Lady Doc's" rear hooves was gone, that bones were exposed on the same hind limb, and that large chunks of skin and flesh were missing and that some remaining flesh on that hind limb appeared to be rotting.

22.     Upon information and belief, Defendants shortly thereafter contacted an experienced equine veterinarian, who thereafter arrived at Danlon Farms to examine the mare. He found evidence on "The Lady Doc's" injured hind limb of two horizontal and parallel marks above the area of missing and decayed flesh on her hind limb. The veterinarian determined that the injured hind limb of the mare had suffered a strangulation of the blood supply, which had caused the lower portions of her otherwise healthy hind limb and hoof to die, rot-off and putrefy due to lack of blood supply.

23.     After his examination, the veterinarian recommended that "The Lady Doc" be humanely euthanized. Plaintiff and Puckett accepted the recommendation. The veterinarian then euthanized "The Lady Doc."

24.     Upon information and belief, the veterinarian did not charge Defendants or Plaintiff for his examination, diagnosis, and euthanizing of "The Lady Doc" in light of the horrific injury suffered by the mare.

25.     After "The Lady Doc" was euthanized, Puckett found and recovered her missing hind hoof with the frog (sole) still attached.

26.     Upon information and belief, these body parts of "The Lady Doc" were found in a small depression along the fence line of the Danlon Farms' pasture, where the mare had been pastured and found gravely injured.

27.     Upon information and belief, "The Lady Doc's" injured hind leg had been hung in the plastic fence of the pasture, causing the strangulation and subsequent rot of the lower portion of her hind leg.

28.     Upon information and belief, after the hoof and substantial flesh rotted off her hind leg, "The Lady Doc" was only then able to extract herself from the constraint of the plastic fence.

29.     Upon information and belief, she had been without food, water, or care until she was able to free herself and limp on her rotting hind leg to food and water and where she was ultimately discovered by Defendants on or about August 18, 2003.

30.     Defendants failure to properly care for, maintain, and look after "The Lady Doc," or even discover her plight, resulted in her irreparable injury and death, the

loss of her unborn foal from being re-bred to "Broken Promises,' and the loss of all future production of foals from "The Lady Doc."

31     From May 15, 2002, when Plaintiff and Puckett entered the contract of reference herein and Puckett accepted from Plaintiff delivery of "The Lady Doc" and her Skywatch Filly at Danlon Farms, through March 4, 2005, when Puckett entered and sold the Skywatch Filly at Sand Creek Sales, Inc., Puckett was exclusively responsible for the care, maintenance, training, development and marketing of the Skywatch Filly.

32.     Puckett neglected the development, training and marketing of the Skywatch Filly.  Although under his care for nearly three (3) years, the filly could not be mounted to ride without being tied-up or held by a ground man.  Upon information and belief, he failed routinely to halter or lead her as a weanling or yearling and failed consistently to cart, ride, or train her thereafter.

33.     Puckett failed to market the Skywatch Filly for sale to third-parties.  On information and belief, he failed reasonably to show her to or inquire as to interest in her purchase by potential, third-party purchasers.

34.     Puckett ultimately entered the Skywatch Filly in a dispersal sale at public auction.  Upon information and belief, he accepted the last bid.  He did so without consultation with Plaintiff as to such bid.  Puckett arranged for the auction settlement check to be sent directly to Plaintiff, but failed to reimburse Plaintiff for deductions to the settlement check associated with the selling costs at the auction.

35.     Plaintiff has suffered the loss of his property and economic damages as a result of Defendants' joint and several actions alleged herein.

### COUNT 1 – AS TO PUCKETT, FAILURE OF BAILEE, TO RETURN THE BAILMENT TO BAILOR, IN PROPER CONDITION

36. Plaintiff restates the allegations contained in paragraphs 1-35.

37. At all times material hereto, Puckett was in the business of caring for broodmares and their foals, as well as training Tennessee Walking Horses.

38. Plaintiff delivered his brood mare, "The Lady Doc," to Puckett in sound condition. Puckett has not and cannot return "The Lady Doc" to Plaintiff in a similar condition.

39. Puckett is in breach of his bailment of Plaintiff's property and is liable to Plaintiff for the replacement and/or value of such property and the damages suffered by Plaintiff pending such replacement or payment.

## COUNT II – AS TO DANLON FARMS AND POTTER, FAILURE OF BAILEE, TO RETURN THE BAILMENT TO BAILOR, IN PROPER CONDITION

40. Plaintiff restates the allegations contained in paragraphs 1-35.

41. At all times material hereto, Danlon Farms and Potter were in the business of caring for broodmares and their foals.

42. Puckett delivered Plaintiff's broodmare, "The Lady Doc," to Danlon Farms and/or Potter in sound condition. Danlon Farms and Potter have not and cannot return "The Lady Doc" to Plaintiff in a similar condition.

43. Danlon Farms and/or Potter is/are in breach of the bailment of Plaintiff's property and are liable to Plaintiff for the replacement and/or value of such property and damages suffered by Plaintiff pending such replacement or payment.

## COUNT III – AS TO PUCKETT, NEGLIGENCE

44. Plaintiff restates the allegations contained in paragraphs 1-35.

45.    Puckett owed Plaintiff a duty of care for "The Lady Doc.". Puckett breached that duty and as a result the mare's "Broken Promises" foal was aborted.

46.    Puckett owed Plaintiff a duty of care for "The Lady Doc." Puckett breached that duty and as a result the mare, while back in foal to "Broken Promises," was gravely injured and was consequently euthanized.

47.    Puckett's negligence was the proximate cause of damages to Plaintiff.

## COUNT IV – AS TO DANLON FARMS AND/OR POTTER,

## NEGLIGENCE

48.    Plaintiff restates the allegations contained in paragraphs 1-35.

49.    Danlon Farms and Potter owed Plaintiff a duty of care for "The Lady Doc" while pastured on their property. These Defendants breached that duty and "The Lady Doc" was gravely injured and was consequently euthanized.

50.    Such negligence by Danlon Farms and Potter was the proximate cause of damages to Plaintiff.

## COUNT V – AS TO PUCKETT, BREACHES OF CONTRACT

51.    Plaintiff restates the allegations contained in paragraphs 1-35.

52.    Defendant John Puckett, individually and as agent for Defendants John and Holly Puckett d/b/a Defendant Puckett Stables, contracted with Plaintiff to provide a safe environment for and proper care to "The Lady Doc." These Puckett Defendants failed to do so causing "The Lady Doc" to abort her foal by "Broken Promises."

53.    Defendant John Puckett, individually and as agent for Defendants John and Holly Puckett d/b/a Defendant Puckett Stables, contracted with Plaintiff to provide a safe environment for and proper care to "The Lady Doc." These Puckett Defendants

failed to do so causing "The Lady Doc," while back in foal to "Broken Promises," to be gravely injured and consequently euthanized.

54. Defendant John Puckett, individually and as agent for Defendants John and Holly Puckett d/b/a Defendant Puckett Stables, contracted with Plaintiff to train, develop, and market the Skywatch Filly at no cost to Plaintiff. These Puckett Defendants adequately to train, develop, and market the Skywatch Filly and then forced Plaintiff to incur, without reimbursement, costs of the auction sale of the Skywatch Filly.

54. Each and all of such actions by these Puckett Defendants are in breach of their contract with Plaintiff and Plaintiff has suffered damages as a result thereof.

## DAMAGES

**WHEREFORE**, Plaintiff demands that a trial by jury be had on all Counts and that following such trial, judgment be entered on Plaintiff's behalf against Defendants, individually, jointly and severally:

1. For all losses and damages suffered by Plaintiff, which losses and damages exceed the jurisdictional limits of the Court;

2. For Plaintiff's costs of this action; and,

3. For such further and additional relief as the Plaintiff may show and the Court may deem appropriate.

Respectfully submitted
This _5_ day of December 2008,

Mark A. Polk          BPRN 22238
107 West College Street
Murfreesboro, Tennessee 37130
615) 893-6592

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CHARLES E. CHEEK

**DEFENDANTS**
JOHN PUCKETT, JOHN PUCKETT and HOLLY PUCKETT d/b/a PUCKETT STABLES, DANLON FARMS, LLC, EDWARD SCOTT POTTER and KATHY POTTER

(b) County of Residence of First Listed Plaintiff  HARRIS
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  BEDFORD
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Mark A. Polk/   WHITE & POLK, P.C.
107 West College St.
Murfreesboro, TN 37130   (615)893-6592

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | **PERSONAL INJURY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 362 Personal Injury - Med. Malpractice | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☒ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | **Habeas Corpus:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332
Brief description of cause:
Action for damages to property based on breach of contract, negligence  and Tenn. Code Ann. 24-5-111,

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____  DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT WINCHESTER

| | |
|---|---|
| GREAT AMERICAN INSURANCE CO., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )  No: 4:09-cv-17 |
| | ) |
| EDWARD SCOTT POTTER, | ) |
| KATHY POTTER, | ) |
| DANLON FARMS, L.L.C., | ) |
| JOHN PUCKETT, | ) |
| JOHN PUCKETT and HOLLY PUCKETT, | ) |
| d/b/a PUCKETT STABLES, | ) |
| and CHARLES E. CHEEK, | ) |
| | ) |
| Respondents. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Petitioner, Great American Insurance Co. ("Great American"), pursuant to Rule 57, Federal Rules of Civil Procedure, and 28 U.S.C., §2201, requests the Court to decide the rights and obligations of the parties hereto with respect to a certain policy of insurance.

### The Parties

1. Great American is an insurance company licensed and duly qualified to conduct business in the State of Tennessee. Great American is a corporation organized under the laws of the State of Ohio, with its principal place of business in the State of Ohio.

2. Respondents, Scott Potter and Kathy Potter, are citizens and residents of the State of Tennessee.

3. Respondent, Danlon Farms, L.L.C., is a limited liability company organized under the laws of the State of Tennessee.

4. Respondent, John Puckett, is a citizen and resident of the State of Tennessee.

EXHIBIT B

5.    The Respondents, John Puckett and Holly Puckett, are husband and wife and are citizens and residents of the State of Tennessee. John Puckett and Holly Puckett operate a partnership known as Puckett Stables.

6.    The Respondent, Charles E. Cheek is a citizen and resident of the State of Texas.

## Jurisdiction

7.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, diversity of citizenship. The amount in controversy exceeds $75,000 exclusive of interest and costs.

## The Policy

8.    Great American issued an Agripak policy to Scott Potter and Kathy Potter, and Danlon Farms, L.L.C., bearing policy number APK-1974439-03, with effective dates from April 4, 2003 to April 4, 2004. John Puckett is an additional insured on the policy. A true and accurate copy of the policy is attached as "Exhibit A" and incorporated herein by reference.

9.    The policy provides that Great American "will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." According to the policy, Great American has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

10.   The policy contains the following exclusion:

### AGRIPAK FARM AND RANCH POLICY

### FARM GENERAL LIABILITY COVERAGE FORM

...

**Exclusions**

This insurance does not apply to:

...

2

### b. Contractual Liability

"Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract"; or
(2) that the "insured" would have in the absence of the contract or agreement.

...

### j. Damage to Property

"Property damage" to:
(3)     Property loaned to you;
(4)     Personal property in your care, custody or control.

...

### PERSONAL LIABILITY COVERAGE

...

### 2. Exclusions

This insurance does not apply to:

...

### b. Contractual Liability

"Bodily injury" or "property damage" arising out of:

(1) any "insured's" "business" pursuits;

...

(4) the rendering of, or failure to render, professional services

3

11.     Property damage is defined in the policy as

   (a)     physical injury to tangible property, including all resulting loss of
           use of that property; or
   (b)     loss of use of tangible property that is not physically injured.

## The Underlying Suit

12.     Charles E. Cheek has sued John Puckett, John Puckett and Holly Puckett, d/b/a Puckett Stables, Danlon Farms, L.L.C., Edward Scott Potter, and Kathy Potter ("The Underlying Suit"). Mr. Cheek alleges that he acquired a show horse with world brand champion bloodlines at a cost of One Hundred Ten Thousand & No/100 Dollars ($110,000.00), and thereafter incurred costs exceeding Fifty Thousand & No/100 Dollars ($50,000.00) for the care, training, showing, and breeding of the horse. He alleges that on or about May 15, 2002, he entered into a contract with John Puckett to board, maintain, and care for the horse and her nine-day old first foal. He alleges that he delivered the horse and her foal, both in sound condition, to John Puckett at Danlon Farms, that Puckett accepted delivery of the horse and foal, and that several weeks later, Puckett moved the horse and her foal from Danlon Farms to rural property on which the Pucketts reside near Wartrace, Tennessee.

13.     Mr. Cheek alleges that the horse was delivered by John Puckett in sound condition to Danlon Farms and/or Scott Potter and Kathy Potter, and that the horse was put in the pasture at Danlon Farms to be cared for along with other horses under the care of Danlon Farms and/or the Potters.

14.     Mr. Cheek alleges that Danlon Farms and/or the Potters accepted delivery of the horse, and that Danlon Farms and/or the Potters provided care to the horse while in their pasture. Mr. Cheek alleges that the horse was discovered, on or about August 18, 2003, in the pasture at

4

Danlon Farms in an injured state. He alleges that the horse had to be euthanized as a result of its injuries.

15.     Mr. Cheek alleges that the Defendants in the underlying suit failed to properly care for, maintain, and look after the horse, or even discover her plight, while in their care, which resulted in her irreparable injury and death. Mr. Cheek asserts causes of action in bailment, negligence, and breach of contract.

16.     Mr. Cheek alleges John Puckett negligently breached duties owed him while caring for "The Lady Doc" resulting in the mare's "Broken Promises" foal being aborted.

17.     Mr. Cheek contends John Puckett is liable for breach of contract due to his failure to train, develop and market Skywatch Filly causing him to be damaged. A true and accurate copy of the Complaint is attached as "Exhibit B."

### Coverage Issues

18.     The claims alleged against the Defendants in the underlying suit are not covered by the policy, and therefore, Great American does not owe them a duty to defend and/or indemnify same. The basis for there not being any coverage under the policy includes, but is not necessarily limited to, the exclusion for property damage to personal property of others in the insured's "care, custody, or control." Under the terms of the policy, property damage means "physical injury to tangible property, including all resulting loss of use of that property." Further, there is no coverage under the policy because the Defendants are being sued for property damages under a contract or agreement whereby they assumed liability. Finally, there is no coverage for the Defendants because they are being sued for failing to render professional services under a contract and for property damage arising out of their business pursuits.

5

**WHEREFORE**, premises considered, Great American prays the following:

1.     That the Court render a declaratory judgment that the claims alleged against the Defendants in the underlying suit are not covered by the policy, and therefore, that Great American does not owe them a duty to defend and/or indemnify same; and

2.     That Great American receive such other, further, and general relief that the Court deems just and proper.

Respectfully submitted,

__/s/ Christopher M. Jones_____
Mark S. LeVan, (# 012155)
Christopher M. Jones (# 022142)
**LeVAN, SPRADER, PATTON & McCASKILL**
150 Fourth Avenue North, Suite 1020
Nashville, TN 37219
(615) 843-0300 telephone
(615) 843-0310 facsimile

*Attorneys for Petitioner*